**POLO FASHIONS INC., Plaintiff,**

v.

**B. BOWMAN & CO., et al., Defendants.**

**No. 82 Civ. 4870.**

United States District Court,
S.D. New York.

Aug. 22, 1984.

Amster Rothstein & Engelberg by Milton Springut, New York City, for plaintiff.

Hellring, Lindeman, Goldstein, Seigal & Greenberg by Robert S. Raymar, Newark, N.J., for defendants.

## OPINION

MOTLEY, Chief Judge.

Plaintiff, Polo Fashions, Inc., is a New York Corporation which manufactures "Ralph Lauren" designer clothing. Defendant Designer Imports, Ltd. is purportedly a New Jersey corporation which manufactures clothing. Defendant Jerome Finkelstein is the principal of Designer. Defendant B. Bowman & Co. is a clothing retailer and a customer of Designer.

Polo originally sued Bowman in July 1982 under the Lanham Act for trademark infringement. After determining the origin of the goods in question, Polo amended its complaint to add Designer and Finkelstein. Polo alleges completion of service of process on Finkelstein in September, 1982 and on Designer by January 1983. Bowman then crossclaimed against Designer and Finkelstein and settled with Polo. Polo obtained default judgments against Finkelstein in November, 1982 and against Designer in March 1983.

Designer and Finkelstein subsequently moved for an order vacating the default judgments entered against them. Polo moved for an order permitting substitute service of the default judgments on the defendants' attorneys. Defendants claimed that neither Designer nor Finkelstein were ever served, that they never had adequate notice of the suit, and that they had meritorious defenses. Polo claimed that both of the defendants were served properly, that they had ample notice, and they had no meritorious defenses. Having determined that service of process was likely to be the dispositive issue with respect to the defendants' motions, the court held an evidentiary hearing in order to resolve the factual contentions surrounding service both on Designer and on Finkelstein.

## FINDINGS OF FACT

Finkelstein lives in a private home in Engelwood, New Jersey, and lived there

during the time in question (Tr. at 21). It is undisputed that on the day service is alleged to have been completed at Finkelstein's home, he was not personally served. Instead, Polo contends that its process server, Philip J. Assante, served a copy of the summons and complaint on Finkelstein's housekeeper, Victoria A. Mitchell, at Finkelstein's residence on September 2, 1982 (Tr. at 4).

Finkelstein employs Mitchell as a housekeeper and did so during the time in question (Tr. at 10). Mitchell does not live in the Finkelstein residence, but commutes there from her home in Brooklyn, New York each day and works from 9:00 to 5:00 (Tr. at 10-11). She has neither lived at the Finkelstein home at any time nor ever stayed there overnight (Tr. at 11). She was instructed by Finkelstein when she started to work for him not to open the door for visitors or accept papers from messengers or other persons making deliveries (Tr. at 11).

Assante testified about service on Finkelstein in the following way. He is employed by McAward Associates, licensed private investigators in New York, and has been employed by them for 15 years (Tr. at 15). On September 2, 1982, he went to Finkelstein's house, rang the door bell, and spoke through an intercom and identified himself as someone with a package to deliver to Finkelstein (Tr. at 15-16). A woman who identified herself as Finkelstein's housekeeper opened the inner door and told Assante that Finkelstein was not home (Tr. at 16). He then took a copy of the summons and complaint from a package and handed it toward her (Tr. at 16). As he did so, she attempted to close the inner door and, at the same time, Assante quickly reached in and threw or dropped the papers inside the house and touched her with them in the process (Tr. at 16-19). Although he could not positively identify the person at the door as Mitchell (Tr. at 16), who was present in the courtroom, he did recall his description of her which is contained in his affidavit of service (Tr. at 16-17), and it described her fairly.

Mitchell's testimony consisted of her denial of receiving a summons and complaint on that day and her denial of receiving any papers from a person who identified himself as a process server (Tr. at 12).

Having listened to the testimony and observed the demeanor of these two witnesses in the courtroom, the court credits Assante's testimony and finds that he in fact did serve the summons and complaint on Mitchell in the manner described in his testimony.

With respect to service on Designer, Polo contends that it affected service pursuant to New York's Business Corporation Law § 307, by serving a copy of the summons and complaint on the Secretary of State of New York and by registered mail to Designer (Tr. at 7). Jerome Finkelstein, president of Designer, testified that he did not receive the summons and complaint at the offices of Designer, and that he had no knowledge of service on Designer (Tr. at 22, 24). The only evidence introduced by Polo at the hearing regarding service on Designer was an envelope which was registered and addressed to Designer at Finkelstein's New Jersey residence (Plaintiff's exhibit 30; Tr. at 78-84). The envelope indicates that after two notices from the Post Office to Designer, the envelope was returned to the sender.

After Polo offered its attorney's declaration with respect to service on Designer pursuant to Business Corporation Law § 307, defendant objected that the declaration was controverted and stated that he would want to cross examine Polo's attorney on the statements it contained (Tr. at 80-82). Polo's attorney did not take the stand and testify with respect to his efforts to serve Designer and his declaration was not received into evidence. The result was that no evidence of service on Designer other than by the registered mailing (Plaintiff's exhibit 30) was received into evidence.

CONCLUSIONS OF LAW

Service on Mitchell, the housekeeper, does not settle the issue with respect to service on Finkelstein. The question it raises is whether service on a non live-in

housekeeper is sufficient under Fed.R. Civ.P. 4(d)(1). That Rule provides that process must be served either personally or at the person's "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein ...."

There is little reported case law relating to the issue of whether a housekeeper who works in the home during the day but who does not live there is a person "then residing therein" for the purposes of the Rule. Those cases, however, suggest that service on Mitchell was insufficient under Rule 4(d)(1).

In *Barclays Bank of N.Y. v. Goldman*, 517 F.Supp. 403, 413 (S.D.N.Y.1981), service on a maid who "was residing" at the home was deemed sufficient. In *Franklin America, Inc. v. Franklin Cast Products, Inc.*, 94 F.R.D. 645 (E.D.Mich.1982), however, the court held that the housekeeper who worked in the home between two and three days a week did not "reside" in the home for the purposes of the Rule. The court distinguished *Barclays* on the ground that there, the housekeeper who was served also lived in the house, while in *Franklin* the housekeeper did not live in the house. 94 F.R.D. at 646–47. The court noted that

> " 'Residing therein' has long been held to require the recipient of the papers to be actually living in the same place as the defendant. Thus, service upon an employee of defendant who spends only a part of his time at defendant's residence is defective ...."

94 F.R.D. at 647, *quoting* C. Wright & A. Miller, *Federal Practice and Procedure*, § 1096, at 368–69 (1969). In *Zukerman v. McCulley*, 7 F.R.D. 739 (E.D.Mo.1947), *app. dism'd*, 170 F.2d 1015 (8th Cir.1948), the court held that service on a janitor was insufficient where the janitor only spent part of the day in the defendant's rooming house and did not live there. *See also* 2 *Moore's Federal Practice* § 4.11[3] (1984) (service on "a servant who works in the party's house, but resides elsewhere" is defective).

The "residing therein" requirement is not always applied literally. In *Nowell v. Nowell*, 384 F.2d 951 (5th Cir.1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968), the court held that service on an apartment building manager who lived in a different building than the defendant was sufficient under 4(d)(1). The two buildings, however, were part of a two-building complex which were separated just by an allyway. The court held that a liberal construction of the Rule was required when there was actual notice of the suit. Thus, while not living literally in the same building as the defendant, the person served nevertheless was actually living in the same apartment complex. The case with Finkelstein's housekeeper is not analogous because the home is not in an apartment complex and his housekeeper lived nowhere near the home. *Pickford v. Kravetz*, 17 Fed.Rules Service 19 (S.D.N.Y. 1952), is not sufficiently analogous either because the manager upon whom service was made, and whose hotel was found to have been the defendant's dwelling, was determined to have spent "all day almost every day" at the hotel. Mitchell, on the other hand, spent a more limited number of hours during the day at the Finkelstein home.

The weight of authority leads to the conclusion that service on Mitchell is insufficient under Rule 4(d)(1) to give the court jurisdiction over Finkelstein. Even if Finkelstein had notice of the suit, as Polo contends, it is elementary that a judgment is void when it is entered against a defendant over whom the court has no personal jurisdiction. *Morrissey v. Curran*, 650 F.2d 1267, 1276–77 (2d Cir.1981); *Peterson v. Sheran*, 635 F.2d 1335, 1337 (8th Cir. 1980); *Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648 (S.D.N.Y.1966). *See also* 4 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1063, at 204 (1969).

The same conclusion must be reached with respect to jurisdiction over Designer. The proof plainly was insufficient to support a conclusion that Polo had

complied with the rules for service on Designer. New York's Business Corporation Law § 307 requires both service on the Secretary of State and a copy sent by registered mail. Here, the proof is limited to the registered mailing and is totally absent concerning service on the Secretary of State. The court only can conclude that service on Designer was not in compliance with § 307 and that, consequently, the default judgment is void because the court never had jurisdiction over the corporation.

Realizing that its proof at the hearing failed with respect to service on Designer, Polo subsequently moved for an order including in the hearing record certain written statements contained in a declaration and an affidavit by Polo's attorney as well as certain documents attached thereto.

Polo's motion must be denied. This very issue was raised during the hearing when Polo was explicitly reminded by the court that it had to include in the hearing record all the evidence with respect to service on both parties and could not rely on controverted affidavits filed with the Clerk's office (Tr. at 79–84). Defendants' attorney had expressly objected to introduction of the very declaration and affidavit Polo now seeks to introduce on the ground that he wanted to cross examine Polo's attorney, the declarant, with respect to the statements contained in them (Tr. at 81). Polo's attorney never took the stand, the declaration and affidavit were not received, and the only "document" received into evidence was the envelope. Polo was aware of what was required of it before the hearing ended. To permit the declaration and affidavit to be received into the hearing record now would deny the defendants the opportunity to cross examine the declarant and to object to exhibits—something to which they are entitled as a matter of due process.

For the foregoing reasons, the defendants' motions to vacate the default judgments are granted. Their application for leave to file answers shall be deemed as waiver of service of process and a consent to jurisdiction and is also granted.