**Eugene HASENFUS and Sally Hasenfus, Plaintiffs,**

**v.**

**CORPORATE AIR SERVICES, et al., Defendants.**

**Civ. A. No. 88–1412.**

United States District Court, District of Columbia.

Oct. 27, 1988.

Stephen D. Barnes, Strange & Nelson, Los Angeles, Cal., Christopher A. Hart, Hart & Chavez, Washington, D.C., for plaintiffs.

Robert Beckman, David Kirstein, Beckman & Kirstein, Washington, D.C., for defendant Southern Air Transport, Inc.

Paul Castellito, Sharp, Green & Lankford, Washington, D.C., for defendant Richard Secord.

## MEMORANDUM OPINION AND ORDER

BARRINGTON D. PARKER, Senior District Judge:

In this diversity proceeding, plaintiffs Eugene and Sally Hasenfus, husband and wife, seek to recover damages from defendants Corporate Air Services ("Corporate Air"), Southern Air Transport ("Southern Air"), Richard Secord ("Secord") and Albert Hakim ("Hakim"). Their claim for damages stems from an alleged breach of a written employment contract between Eugene Hasenfus and Corporate Air. Plaintiffs allege that Corporate Air is a mere facade dominated and controlled by the other defendants to carry out their wrongful and unlawful purposes.[1]

Plaintiffs advance a variety of contract and tort claims including: breach of contract, tortious breach of the covenant of good faith and fair dealing, strict liability in tort, negligence, intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion. (Complaint ¶¶ 36–77.) Sally Hasenfus was not a party to the contract. Her claims appear to be based on three broad allegations against all defendants, charging them with negligent misrepresentations and intentional and negligent infliction of emotional distress.

This matter is before the Court on the motions of defendants Southern Air and Secord to dismiss the complaint for lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(2), (3) and (6), and *forum non conveniens*. Secord also seeks to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, contending that this cause of action is not recognized under District of Columbia law. Defendant Hakim has moved to set aside the July 19, 1988 default entered against him, asserting that the purported service of process was improper and legally insufficient.

For the reasons discussed below, the Court finds and concludes that a fair and careful reading of plaintiffs' 22–page, 77–paragraph prolix complaint raises serious questions as to any reasonable basis for asserting personal jurisdiction over any defendant. Likewise, a fair and careful reading of the complaint sheds little, if any, reasonable justification for a claim of venue. Defendants are entitled to relief as provided herein.

## BACKGROUND

### A.

None of the parties to this litigation are District of Columbia residents. Plaintiffs at all times were Wisconsin residents. At no time did they have contacts with any defendant in the District of Columbia. Defendants Southern Air and Corporate Air are foreign corporations incorporated in the states of Florida and Pennsylvania, respectively. Their principal business residences are Florida and Central America. (Complaint, ¶¶ 3 and 4.) There is no allegation that either corporation had at any time established residences or were present in the District. Defendants Secord and Hak-

---

1. Fronefield Crawford, the alleged authorized agent for Corporate Air Services, was served with a copy of the complaint and summons on June 21, 1988 in Radnor Tp., Wayne, Pennsylvania. Beyond that, however, no one has entered an appearance for that defendant and no response has been filed.

im are residents of the states of Virginia and California, respectively. (¶¶ 5 and 6.)

Only if one accepts and gives credence to vague, unsupported and conclusory allegations can it be determined that any of the nine claims arise from events that occurred in this jurisdiction. The complaint does not allege that either plaintiff had conversations, contacts or interfaced in any manner with the defendants in the District of Columbia or that any transaction in connection with this litigation occurred in the District. Nor does the complaint allege that plaintiffs sustained injury in the District. All of the events which support the nine causes of action occurred in Florida, several Central American countries, and probably the state of Wisconsin. Moreover, it is surprising that plaintiffs' lengthy complaint fails to mention and places no reliance upon the controlling local long-arm statute. D.C.Code Ann. § 13–423(a), (b) (1981).

### B.

According to the complaint, an alleged written employment contract between Eugene Hasenfus and defendant Corporate Air, was first discussed and presented to Eugene Hasenfus by William J. Cooper ("Cooper"). The contract was later executed sometime in July 1986. (¶¶ 19 and 20.) Three months later, Cooper died in an airplane crash in Nicaragua. (¶¶ 29 and 30.) Allegedly, Cooper was acting as an agent and employee of Corporate Air and the defendants when he solicited and fraudulently induced Hasenfus to sign the contract. All conversations and activities between Corporate Air and Hasenfus took place either in Florida, Central America and possibly Wisconsin.

There is no allegation in the complaint that either plaintiff had ever corresponded, seen, talked or interfaced with Cooper in the District. Plaintiffs fail to allege that the Hasenfus–Corporate Air contract was performed or breached in the District. There is no allegation that any tortious act or any resulting injury to either plaintiff occurred in the District. Rather, it is clear from the complaint that all of Eugene Ha-

senfus' activities as a Corporate Air employee occurred either in Florida or Central America.

### C.

In the General Allegations section of the complaint, ¶¶ 13–35, plaintiffs describe an operation and organization referred to as "the Enterprise", a private undertaking directed by Lt. Col. Oliver North ("North") and designed to provide military and other assistance for Contra forces opposing the Sandinista government in Nicaragua. (¶ 17.) Plaintiffs believed its "nerve center" was located in the District of Columbia, and that Secord and Hakim were extensively involved with North in its operations. North was not named as a defendant in the complaint.

### D.

In the opening pages of their complaint (¶¶ 7, 10 and 11), plaintiffs label Cooper as the defendants' agent. Furthermore, plaintiffs allege that each defendant was the agent of the other, acting within the scope of the agency. They also allege that each defendant was a co-conspirator with the other acting in furtherance of the conspiracy.

Defendants claim that these allegations are superfluous and without any factual basis. A searching analysis of plaintiffs' complaint and their opposing memoranda to defendants' motions clearly show that their allegations are conclusory and fall short of a *prima facie* showing.

### ANALYSIS

#### A. Personal Jurisdiction

Whether this Court may properly exercise personal jurisdiction over a nonresident defendant, depends upon an application of both the District of Columbia long-arm statute and the Due Process Clause of the 14th Amendment. *First Chicago International v. United Exchange Co., Ltd.*, 655 F.Supp. 787, 790 (D.D.C.1987), *aff'd in part*, 836 F.2d 1375 (D.C.Cir.1988) (trial court lacked personal jurisdiction over company and its officers where plaintiff failed

to make a *prima facie* showing that company purposefully established minimum contacts or that it participated in a conspiracy); *Mizlou Television Network, Inc. v. National Broadcasting Company, et al.*, 603 F.Supp. 677, 681 (D.D.C.1984) (trial court lacked jurisdiction because plaintiffs failed to allege continuous and systematic business contacts).

The provisions of the Statute that apply to the narrow circumstances under which personal jurisdiction attaches to a non resident defendant states, in part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

\*    \*    \*    \*    \*    \*

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

\*    \*    \*    \*    \*    \*

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code Ann. § 13–423 (1981).

The Supreme Court has long determined that the Due Process Clause of the 14th Amendment limits a court's power to render a valid personal judgment against a nonresident defendant. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (salesmen employed by foreign corporation established sufficient contacts between state and foreign corporation making it reasonable for state to enforce obli-

gation against corporation); *Kulko v. California Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (California court's exercise of personal jurisdiction would violate due process as New York domiciliary's act of sending child to California to live with her mother connotes no intent to expect or obtain corresponding benefit from the state). A nonresident defendant may be hauled into court *only if* " 'certain minimum contacts' [exist between the defendant and the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (emphasis added); *accord Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed. 2d 404 (1984) (foreign corporation's contacts with Texas were insufficient to satisfy due process requirements and to assert personal jurisdiction); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (sufficient minimum contacts did not exist between defendant and forum for Oklahoma trial court to exercise personal jurisdiction over New York residents involved in car accident). The concept of minimum contacts protects defendant against burdensome litigation in a distant or inconvenient forum, and ensures that courts do not reach beyond the limits imposed on them in the federal or state system. *Id.* at 291, 100 S.Ct. at 564.

In determining whether minimum contacts exist, the Supreme Court has stated that a court should "properly focus[ ] on 'the relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (Ohio publisher's regular circulation of magazines in New Hampshire was sufficient to support assertion of personal jurisdiction in libel action based on magazine's contents). This relationship must be to an extent that it is "reasonable ... to require the corporation to defend the particular suit which is brought there." *Internation-*

*al Shoe,* 326 U.S. at 317, 66 S.Ct. at 158.[2] Other factors that should be considered are the forum state's interest in adjudicating the dispute, *see, McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), and the plaintiff's interest in obtaining convenient and effective relief, *see Kulko,* 436 U.S. at 92, 98 S.Ct. at 1696. Therefore, due process "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565.

■ In their initial opposition to Southern Air and Secord's dismissal motions, plaintiffs argue that personal jurisdiction exists through Cooper, defendants' alleged agent, and defendants' alleged business in the District.[3] Their entire jurisdictional argument is based solely on conclusory statements and allegations that the nonresident defendants were co-conspirators. Yet, even in accepting the facts in a light most favorable to the plaintiffs, our Circuit established that this alone is insufficient to make a *prima facie* showing that personal jurisdiction exists over the defendants. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779 (D.C.Cir.1983).

In *Naartex,* Chief Judge Wald affirmed the trial court's decision because plaintiffs' conclusory statements were insufficient to establish personal jurisdiction over the nonresident defendants. Such statements failed to establish a *prima facie* showing of personal jurisdiction under the long-arm statute. Moreover, under *First Chicago,* 836 F.2d at 1378, at a minimum, there must be the commission of an overt tortious act in furtherance of the conspiracy and causing injury in the District. *See also, Mandelkorn v. Patrick,* 359 F.Supp. 692, 696 (D.D.C.1973).

Nowhere in their complaint, however, do plaintiffs allege or make the required *prima facie* showing that either a conspiracy existed or that Cooper was defendants' agent. They simply allege a conspiracy theory of jurisdiction to tie all defendants to the District and attempt to establish personal jurisdiction on unspecified and unsubstantiated claims that Cooper was defendants' agent. Bald speculations that defendants are alleged co-conspirators do not constitute the threshold showing necessary to carry the burden of establishing personal jurisdiction. *Naartex Consulting Corp.,* 722 F.2d at 787; *see also, First Chicago,* 836 F.2d at 1378.

Nevertheless, in a post-hearing memorandum opposing dismissal, plaintiffs argue they are not required to do more in their complaint. (September 6, 1988 at 2.) However, in light of this Circuit's decisions in both *Naartex* and *First Chicago,* plaintiffs have not met the required standard. Furthermore, they fail to remember that the long-arm statute is specifically tailored to bring only certain limited nonresident defendants within the District's jurisdiction. Therefore, at a minimum, plaintiffs must reasonably show that their suit falls within the parameters of the District's long-arm statute. They fail to do so.

Plaintiffs also rely heavily on *Mandelkorn* for the proposition that personal jurisdiction can be obtained over all members of a conspiracy so long as one overt act in furtherance of the conspiracy has occurred in the district. However, the *Mandelkorn* complaint not only alleged an actionable conspiracy but also that an overt tortious act in furtherance of the conspiracy occurred in the District. Here, plaintiffs only superficially allude to a conspiracy and fail to allege that any overt, tortious act occurred in the District. Moreover, the court in *Mandelkorn* stressed that its decision might have been different had the facts underlying the conspiracy been contested.

---

2. Even in the absence of continuous contact between the defendant, the forum and the litigation, jurisdiction can be based solely on the defendant's "continuous and systematic general business contacts" with the forum. *Mizlou Television Network,* 603 F.Supp. at 681.

3. Plaintiff's Consolidated Opposition to Motions to Dismiss of Defendants Richard Secord and Southern Air Transport, (Aug. 8, 1988) at 10. In this pleading, plaintiffs for the first time rely on the D.C. long-arm statute.

In fact, even if one of the defendants were present or resided in the District, this in itself would not create jurisdiction over all of the alleged co-conspirators.[4]

As previously mentioned, no contract was negotiated or executed in the District. Nevertheless, plaintiffs argue that this Court can properly exercise personal jurisdiction under subsection 423(a)(1) the "transacting any business" provision. They fail, however, to recognize that our Circuit court has held that subsection 423(b) serves as an effective "bar to claims *unrelated* to the acts forming the basis for personal jurisdiction." *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981) (emphasis added) (trial court did not have jurisdiction over former wife's father's executor since father did not have sufficient contacts with the District). Therefore, this argument is also unpersuasive as the activities allegedly conducted within the District have virtually no connection with plaintiffs' claims.

■ In the complaint, plaintiffs allege that North was the government official responsible for overseeing the Contra assistance program. Since North "operated out of Washington, D.C.", they believe Washington was the "nerve center" of the operation. (¶¶ 13, 16.) Surprisingly, however, even though they allege that North oversaw and conducted the entire operation, they fail to name him as a defendant. Bringing him in this litigation at least would have introduced a defendant with an established presence here.

In their initial opposition, plaintiffs also make numerous references to the Iran–Contra Report[5] as a basis for establishing personal jurisdiction over Secord; they attempt to establish that defendants had significant contacts with the District through Secord's involvement with North and his activities in the Contra resupply operation. Yet, none of these allegations have even the slightest connection with plaintiffs' substantive claims; none of them persuasively show how defendant Secord's conduct or activity in Washington, D.C. led to plaintiffs' claims. Even if there is a relation between Secord's activities and plaintiffs' alleged claims, it is simply too tenuous to satisfy due process and long arm requirements.

The same is true for defendant Southern Air. Paragraph 23 of the complaint relates to certain acts allegedly performed by Southern Air. These alleged acts, however, did not occur in this jurisdiction but either in Florida or certain Central American countries.[6] Nevertheless, plaintiffs argue in their opposition to dismissal that Southern Air "substantially participated in an operation which it knew was based in Washington." They argue that minimum contacts exist where a defendant knowingly "affiliat[es] [itself] with an enterprise based primarily in the forum, even though the defendant itself engages in no activities in the forum and has no other contacts within the forum." *citing Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 480, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985). *Burger King*, however, can be distinguished as Southern Air never claimed to know that the Contra resupply operation was "based" in Washington, D.C. Furthermore, the Supreme Court determined that the franchise dispute in *Burger King*, grew

---

**4.** "[T]he mere presence of one co-conspirator within the jurisdiction does not create jurisdiction over all alleged co-conspirators ... there must be, at least, alleged acts by one co-conspirator within the jurisdiction, in furtherance of the claimed conspiracy." *Mandelkorn*, 359 F.Supp. at 696 (citations omitted).

**5.** S.Rep. No. 216, 100th Cong., 1st Sess. 3 (1987). Plaintiffs suggest that this Court could judicially notice the Report. The Report, however, is a political document representing the partisan views of different political parties. Since its facts cannot be verified by a source whose accuracy can be accepted, as required under Fed.R.

Evid. 201(b), this Court cannot take judicial notice of this Report.

**6.** Plaintiffs also allege that Sally Hasenfus received calls from unnamed government officials who promised that defendants would pay all expenses associated with her husband's detention and trial in Nicaragua. (¶ 32.) Plaintiffs do not know which government officials made these assurances. Even if established, this probably would be insufficient to secure personal jurisdiction under the District's long-arm statute. See *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir.1983).

directly out of a " 'contract which had a *substantial* connection with that [s]tate'." *Id.* at 479, 105 S.Ct. at 2185; therefore it relied on the fact that the franchisee deliberately "reached out" beyond Michigan to negotiate and do business with a Florida corporation. *Id.* Certainly, that is not the case here; the Hasenfus–Corporate Air contract had absolutely no substantial connection with the District. Moreover, Southern Air did not purposely "reach out" to do business either with the plaintiffs or any of the other defendants in the District of Columbia.

Plaintiffs also argue that under the foreseeability standard in *World–Wide Volkswagen,* defendants could "reasonably anticipate being called upon to defend their actions in ... Washington, D.C." (Plaintiffs' Consolidated Opposition to Motions to Dismiss of Defendants Richard Secord and Southern Air Transport (Aug. 8, 1988), at 13.) Foreseeability focuses on whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. In his affidavit, defendant Secord avers that he never met, talked with or hired Eugene Hasenfus and never acted as a director, agent or employee of either Southern Air or Corporate Air. Therefore, even though Secord may have had some connection with Washington, D.C., it was not sufficient or foreseeable that he would be subject to suit here by these plaintiffs and in this capacity. Southern Air never had any contacts with Washington, D.C., hence it was not foreseeable that this Florida corporation would have to defend an action in a foreign state. Furthermore, even if plaintiffs' argument were true, " 'foreseeability' *alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566 (emphasis added).

An additional factor that certainly may be considered is the District's interest in adjudicating the dispute. Plaintiffs do not live in this forum nor have they attempted to demonstrate the District's interest in adjudicating this dispute. *Bayles v. K–Mart Corp.,* 636 F.Supp. 852, 856 (D.D.C. 1986) *citing Keeton,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490. Since the parties have no jurisdictional connection with the District as none of the parties reside here and the nonresident defendants do not fit under any long-arm provision, this Court has no interest in hearing this dispute. In fact, the "virtual absence of any interest in the forum state in hearing this matter also argues for dismissal for want of jurisdiction." *Willis,* 655 F.2d at 1339.

*B. Venue*

Title 28 U.S.C. § 1391(a) provides that an action may be brought only "in the judicial district where all the plaintiffs or all the defendants reside, or in which the claim arose." Since neither plaintiffs nor defendants reside in the District, the only basis for venue is that the claim arose in the District of Columbia.

■ Our Court of Appeals has held that for purposes of venue, a claim arises in any district in which a substantial part of the acts, events or omissions at issue occurred. *Lamont v. Haig,* 590 F.2d 1124, 1134 (D.C. Cir.1978). Given that in some cases, events may have occurred in several jurisdictions, the *Lamont* court determined that venue should be ascertained by "reference to events having operative significance in the case, and a common sense approval of the implications of those events for accessibility to witnesses and records." *Id.*

In this proceeding, plaintiffs argue that the Contra resupply operation—the alleged transaction giving rise to their claims—was based in Washington, D.C. Hence, they rely on *Lamont* and claim Washington D.C. is a convenient forum since defendants committed "numerous acts" in the District and all of the witnesses and records are located here.

*Lamont,* however, can be distinguished on its facts. Plaintiffs' claim in that litigation arose out of an alleged conspiracy, planned and located in Washington, D.C.

Here, plaintiffs have not only failed to allege conspiracy as one of their claims but also failed to factually establish that the alleged conspiracy is based in Washington, D.C. Furthermore, Hasenfus' claims stem from an alleged breach of an employment contract with the operative events occurring primarily in Florida and Central America—the areas where the contract was negotiated, executed and performed. Any alleged witnesses to or records of the contract would be found in Florida or Central America and not the District of Columbia. Since no substantial acts in connection with plaintiffs' claims occurred in the District of Columbia venue does not properly lie here.

## C. *Forum Non Conveniens*

■ Forty years ago, the Supreme Court announced in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947), that "[t]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction and venue is authorized by the letter of a general venue statute." This principle still prevails equally to personal jurisdiction. 1 *Moore's Federal Practice,* ¶ 0.140 [1–3–1] (2d ed. 1986). Although a plaintiff's choice of forum should rarely be disturbed, the court in exercising its discretion may find jurisdiction is more appropriate elsewhere.

*Gulf Oil* provided a long-standing test which appropriately weighed various matters concerning the litigant's interest. The test provides in part:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. Balanced against this are factors pertaining to public interest: "administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.*

In applying those guidelines to this proceeding, the doctrine of *forum non conveniens* is appropriate. As already indicated, plaintiffs are nonresidents of the District of Columbia. The employment contract was not negotiated, executed, performed or breached in the District. Sources of proof, witnesses and other important documentation are elsewhere. Since the contract was negotiated and executed in Florida, the laws of that state should govern all claims stemming from any alleged breach.

## D. *Hakim's Motion to Set Aside Default*

■ On June 2, 1988, in a certified Return on Service of Writ, plaintiffs' special process server served the summons and complaint on defendant Albert Hakim, a California resident. The Return read in part:

> May 31, 1988 at 2:08 p.m. ... by leaving at his place of abode with Dawn Doe, a person over the age of 18 believed to be residing therein.

Hakim failed to file a timely answer to the complaint, and on July 19, 1988 plaintiffs' counsel applied for and secured a default from the Clerk of the Court. Thereafter on August 5, 1988, Hakim, through his counsel, entered a special appearance requesting that the default be set aside on the grounds that the service of process was defective.

Fed.R.Civ.P. 4(d)(1) provides in pertinent part that a summons and complaint shall be served pursuant to specifically delineated circumstances:

> Upon an individual ... by delivering a copy of the summons and ... complaint to the individual personally *or* by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then *residing therein* or by delivering a copy of the summons and ... complaint to an agent authorized by appointment or by law to receive service of process. (emphasis added).

The Rule is not ambiguous. It requires that "[t]he person with whom the copies of

the summons and complaint are left *must reside* in the defendant's dwelling house or usual place of abode." 2 *Moore's Federal Practice,* ¶ 4.11[3] at 4–126. (emphasis added). As noted in Wright and Miller, 4 Federal Practice & Procedure § 1096 at 368–69:

> 'Residing therein' has long been held to require the recipient of the papers to be *actually living in the same place as defendant.* Thus service on an employee of defendant who spends only a part of his time at defendant's residence is defective. (emphasis added).

*See also,* 62 Am.Jur.2d., Process § 102 at 887–88 (1972); *Zuckerman v. McCulley,* 7 F.R.D. 739 (D.C.Mo.1947) *appeal dismissed* 170 F.2d 1015 (8th Cir.1948) (service was ineffective where papers were left at defendant's premises with janitor who had answered door but who only spent part of the day there and resided elsewhere); *Judson v. Judson,* 8 F.R.D. 336 (D.C.Dist.Col. 1943) (leaving summons and complaint with resident manager of apartment hotel where defendant resided did not comply with Rule 4(d)(1)).

Hakim's counsel relies principally on *Franklin America, Inc. v. Franklin Cast Products, Inc.,* 94 F.R.D. 645 (E.D.Mich. 1982). There, the plaintiff attempted to serve defendant by leaving a copy of the papers at defendant's home with his part-time housekeeper. Even though the defendant received the papers and had actual notice of the suit, the district court held that since the housekeeper neither lived in defendant's home nor was appointed as defendant's agent, service did not conform to the rules and therefore was ineffective. *See also, Polo Fashions, Inc. v. B. Bowman & Co.,* 102 F.R.D. 905 (S.D.N.Y.1984) (service of process on nonresident defendant's non-live-in housekeeper during her working hours was insufficient as she did not reside therein).

The facts in this proceeding are strikingly similar. The Return recited that plaintiffs' process server left the summons and complaint at Hakim's place of abode "with Dawn Doe, a person over the age of 18 believed to be residing therein." Even on its face, the Return indicates that service was defective and failed to comply with the provisions of the Rule. The papers were left with a woman *believed* to reside on the premises. Hakim's counsel, however, filed uncontested affidavits which clearly show that no person named Dawn Doe resides at Hakim's home. The uncontested affidavit of Dawn M. Salamida, Hakim's part-time secretary, states that she was the individual who was at Hakim's home when service was attempted. In her affidavit, she specifically states that she told the process server she neither lived at the home nor was she authorized to accept papers on Hakim's behalf. Nevertheless, she avers that the process server "then placed the papers on the top of the gate, and left." *Id.*

In a supplemental affidavit, Karen Hawkins, one of Hakim's attorneys, states that she spoke to Salamida after the process server left the papers. She instructed Salamida to mail the papers to her yet she never forwarded them or discussed them with Hakim. Certainly, plaintiffs' attempted service of process did not conform to Rule 4(d)(1). The individual with whom the papers were left neither resided at defendant Hakim's home nor was authorized to accept service on defendant's behalf.

Plaintiffs, however, argue that the spirit or basic purpose of the rule was met as defendant received actual knowledge of the commencement of the action against him. Furthermore, plaintiffs argue that in construing Rule 4(d)(1) "courts have broadly interpreted its provisions where the defendant has received actual notice of the suit." [7] Yet, the record shows that defendant Hakim never received actual notice of the suit. Hawkins states in paragraph 4 of her affidavit, that she never gave the papers to Hakim—instead she has retained them in her files. Moreover, in defendant Hakim's Motion to Set Aside Default, counsel states

---

7. Plaintiff's Opposition to Albert Hakim's Motion to Set Aside Entry of Default (Aug. 19, 1988), at 5.

that Hakim "only became aware of the default order [and ultimately the litigation] when notified by another party named in the complaint." Hence, the record attests to the fact that defendant Hakim did not receive actual notice of the suit. Since Hakim never received actual notice of the suit, his claim of insufficient service is even stronger than defendant's claim in *Franklin America*.[8]

Furthermore, plaintiffs' requirements under the rules are not complex or burdensome, they are simple and straightforward. The rules require only a minimum of compliance and adherence. Nevertheless, plaintiffs have failed to meet this low standard. This Court would be stretching the facts to find that the spirit and purpose of the rules have been met here.

### CONCLUSION

Personal jurisdiction and venue are two important and basic elements which are completely lacking in this proceeding. Furthermore, since neither the parties nor the witnesses nor important sources of proof are located here, this jurisdiction is not a proper forum. Alternatively, this case should be transferred to Florida. Indeed, this Court has learned that on October 4, 1988, plaintiffs filed a complaint against these same defendants in the United States District Court for the Southern District of Florida (CA 88–1841). Plaintiffs have also failed to effectively serve defendant Hakim under Fed.R.Civ.P. 4(d)(1).

The motions to dismiss of Southern Air Transport and Richard Secord for lack of personal jurisdiction, venue and *forum non conveniens* are granted. The motion of defendant Albert Hakim to set aside the default entered by the Clerk of the Court is granted.

It is ORDERED.

---

8. Even "where actual notice has been received by a defendant, nevertheless, it is necessary that the specific requirements for personal service under Rule 4(d)(1) be met." *DiLeo v. Shim Shu,* 30 F.R.D. 56, 58 (S.D.N.Y.1961).