In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3685

ROBINSON ENGINEERING COMPANY, LTD. PENSION
PLAN AND TRUST and R. W. ROBINSON & ASSOCIATES
COMPANY PROFIT SHARING PLAN,

Plaintiffs-Appellees,

v.

MARK G. GEORGE,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 88 C 1071--Charles R. Norgle, Sr., Judge.


Argued December 2, 1999--Decided August 3, 2000




  Before Ripple, Kanne, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  Robinson
Engineering Co. Ltd. Pension Plan and Trust
(Robinson) filed suit against Mark George
(George) alleging that George defrauded Robinson
out of nearly $1,000,000. Robinson claims that it
eventually served George at his residence in
Canada. George never showed up in the district
court, however, and the court in due course
entered a default judgment in Robinson's favor.
Ten years later, asserting that he had never been
served, that he had only recently discovered the
existence of the judgment, and that the district
court had never properly acquired personal
jurisdiction over him, George filed a motion
under Fed. R. Civ. P. 55(c) and 60(b)(4) to
vacate the default judgment. The court denied
George's motion. For the reasons stated below, we
reverse and remand for further proceedings.

I
  This case began more than ten years ago. On
February 5, 1988, Robinson filed a complaint
alleging that George, Timothy McDonald, and Canam
Financial Group, Ltd. had defrauded Robinson out
of nearly $1,000,000 through violations of the
Organized Crime Control Act of 1970 (RICO), 18

U.S.C. sec.sec. 1961-68, Section 12 of the Securities Act of 1933, 15 U.S.C. sec. 77l, and Section 10 of the Securities Exchange Act of 1934, 18 U.S.C. sec. 78j(b) and Rule 10b-5, 17 C.F.R. 240.10b-5. Robinson also alleged supplemental state law claims for rescission and fraud. The court issued a summons for George with a service address of 400 E. Randolph Street, Suite 1622, Chicago, Illinois.

No one served George on Randolph Street, but Robinson got wind of the fact that he could be found in Canada, and so it took steps to locate him there. On June 29, 1988, Robinson filed a return of service indicating that Canadian process server Jim Bangs had served George. (We note that this was not a timely filing under Fed. R. Civ. P. 4(g),which requires that proof of service must be made "promptly" and "in any event within the time during which the person served must respond to the process." According to Bangs's affidavit, he accomplished service on May 12, 1988. The summons states that George had to respond within 20 days, which would have been June 1, 1988, as provided by Fed. R. Civ. P. 6. Proof of service, however, was not filed with the court until June 29, 1988, and was docketed June 30. Because we have decided this case on other grounds, we need not resolve whether George may complain about this defect now.) The return of service was supported by an affidavit from Bangs indicating that service of process had been made by leaving the summons and complaint with an individual residing at George's abode in Calgary, in the Canadian province of Alberta.

The details of that alleged service reveal why George has brought the present action. Bangs reported that he first determined that George and McDonald resided in apartment 806 of a condominium development in Calgary. On May 4, 1988, he observed that George's automobile was parked in the basement of the condominium building. By speaking with the condominium development management, Bangs confirmed that George lived in apartment 806. Bangs then arranged with the inspection service coordinator of the development's property management company to serve a notice to inspect McDonald and George's apartment. On the morning of May 12, 1988, Bangs and the inspector went to the apartment and the inspector knocked on the door. When there was no answer, the inspector opened the door to the apartment and entered to conduct his inspection. Bangs remained in the hallway.

Bangs then saw a man whom the inspector identified as one of the apartment's tenants. Although it is clear that Bangs remained in the hallway and did not enter the apartment, it is

unclear from the affidavit if the man emerged from the apartment, was about to enter the apartment, or merely passed Bangs in the hallway. When Bangs asked the man if he was McDonald or George, the man responded he was neither. Bangs nonetheless thought that the man fit McDonald's physical description; he consequently served the man with a copy of the summons. The inspector told Bangs that after the man was served he became engrossed in the contents of the summons, flipping from page to page. The affidavit closes with Bangs's statement that he believes that the summons and complaint were brought to George's attention.

On July 25, 1988, the district court entered a minute order of default judgment in favor of Robinson and scheduled a prove-up hearing for August 4, 1988. After the prove-up hearing, the court entered a default judgment in favor of Robinson for $959,198 plus costs. The three defendants were held jointly and severally liable.

Ten years later, on March 18, 1998, George alone moved to vacate the default judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b)(4). George alleged that the default judgment was void for lack of proper service under Fed. R. Civ. P. 4. The motion was supported by two documents: an affidavit from George and a purported affidavit from McDonald. The document from McDonald is so irregular, however, that we refrain here from calling it an affidavit. The county and state are not indicated; there is no notary seal; the "notary" did not print or type his or her name or give a commission number; and the "notary" alleged that the commission was good for life. Florida, at least (the state where George's affidavit was signed), would regard this as a nonconforming affidavit. See Fla. Stat. sec.sec. 117.01(1), 117.05. George's affidavit, which does not suffer from these flaws, indicates that he was never served with the summons and did not become aware of the default judgment until late 1997. The supposed statement from McDonald states that he was never served and that at the time service was purportedly made, he did not fit the description attributed to him by Bangs. George also filed a supplemental affidavit indicating that he and McDonald were the only residents of the apartment, including during the period when Bangs attempted service. On August 10, 1998, the court entered an order denying the motion to vacate the default judgment and George subsequently filed this appeal.

II

The abuse of discretion standard of review

governs both our consideration of the district court's entry of default and default judgment, Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 250 (7th Cir. 1990), and our review of its disposition of George's motion to vacate or set aside those rulings, id. "A judgment is void for the purposes of Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply, 55 F.3d 1311, 1316 (7th Cir. 1995) (internal quotations and citations omitted). And "[i]f the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." Id. at 1317. See also Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc., 740 F.2d 1499, 1511 (11th Cir. 1984) (holding trial court abused its discretion in refusing to set aside default judgment where questions as to personal jurisdiction remained).

George raises two alternative arguments for why service of process was defective: first, service was not proper, because abode service was not allowed under the then-applicable version of Rule 4; second, even if abode service was proper, Robinson failed to meet the requirements of that rule. Rule 4 was amended effective December 1, 1993. Service of process, however, is governed by the version of Rule 4 in effect at the time service was attempted. See Manufacturers Hanover Trust Co. v. Ponsoldt, 51 F.3d 938, 938 n.1 (11th Cir. 1995). We must therefore apply the 1988 version of the rule to this case, to which we refer as Rule 4 (1988).

Under Rule 4 (1988), the ordinary territorial limits of effective service were defined to be "anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." Rule 4(f) (1988) (emphasis added). The rule identified two situations in which service might occur upon a party who was not an inhabitant of or found within the state. The first appeared in Rule 4(e) (1988), which authorized such service whenever either a statute of the United States or a statute or rule of court of the state where the court was sitting did so. The manner of service was to follow either the relevant United States statute or state statute, or for those relying on federal statutes, "if there is no provision therein prescribing the manner of service, in a manner stated in this rule." Id. Rule 4(b) and (c) (1988) set forth the manner of service and the

persons who could be served for ordinary cases.
Recognizing, however, that service in foreign
countries presented additional complications, the
rule also included special "Alternative
Provisions for Service in a Foreign Country."
Rule 4(i) (1988).

   Rule 4(e) is primarily concerned with the
individual's amenability to the court's power,
rather than the particular method of service that
may be used. See David D. Siegel, Practice
Commentaries, C4-25 (contained in 28 U.S.C.A.
Federal Rules of Civil Procedure Rules 1-11
(1992)). In order to determine whether George was
amenable to the Illinois federal court's power in
1988, we must first determine if the federal
statutes at issue provide for service in a
foreign country. Neither party addressed this
question; instead, everyone jumped immediately to
the question of the proper method(s) of service.
All of the federal statutes at issue here
authorize nationwide service of process,/1 but
not all of them authorize service in a foreign
country. Compare Stauffacher v. Bennett, 969 F.2d
455, 460-61 (7th Cir. 1992) (holding RICO
statute, 18 U.S.C. sec. 1965(b), authorizes
nationwide but not international service of
process and stating plaintiff must rely on state
long-arm statute for authorization to serve out-
of-country defendant), with Robinson v. Penn
Central Co., 484 F.2d 553, 554 (3d Cir. 1973)
(noting service of process provisions of
Securities Act of 1933, 15 U.S.C. sec. 77v(a),
and Securities Exchange Act of 1934, 15 U.S.C.
sec. 78aa, authorize worldwide service of process
by stating service is proper "wherever the
defendant may be found"); see also Wright &
Miller, Federal Practice and Procedure sec. 1133
at 367 n.9 (1987); Advisory Committee Notes to
1963 Amendment to Rule 4 (listing Securities Act
and Securities Exchange Act as examples of
statutes that permit service outside the United
States).

   Following these authorities, we conclude that
service in Canada was authorized at least for the
claims under the Securities Act and the
Securities Exchange Act. What of the other
claims? The RICO claim arises out of the same
nucleus of operative fact as the securities
claims; it was therefore proper for the federal
court to assert personal jurisdiction over George
for it as well, under the idea of pendent
personal jurisdiction. IUE AFL-CIO Pension Fund
v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993)
(applying doctrine of pendent personal
jurisdiction to assert personal jurisdiction over
related state law claims); Robinson, 484 F.2d at
555-56 (holding it was proper for district court
to entertain pendent state law claims where

federal claims provided for extraterritorial service). The supplemental state common law fraud and rescission claims are somewhat more complex. Under the Federal Rules as they stood in 1988 it was unclear if the nationwide service provided for in a federal statute could be used to gain personal jurisdiction over the defendant for a state law claim as well. (This was obviously only a problem if the state's long-arm statute would not have provided for jurisdiction; otherwise there would be an independent and uncontroversial basis for personal jurisdiction over the state claims.) See Siegel, Practice Commentaries at C4-26 (explaining ambiguity and citing In re Penn Central Securities, 338 F.Supp. 436 (E.D. Pa. 1972), aff'd, 484 F.2d 553 (3d Cir. 1973), as supporting "pendent personal jurisdiction"). In our view, the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. sec. 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under sec. 1367. As far as United States law is concerned, George was amenable to the jurisdiction of the United States District Court for the Northern District of Illinois. We pause to note, however, that a foreign country may or may not agree with the American theory of the reach of the personal jurisdiction of the United States court, and that its view could easily affect the enforceability of the ultimate United States judgment in its own courts./2

We turn then to the method of service that was used. The first question is which law or laws provided the authorized methods available to the court; next, we must consider whether the method used for George complied with that law. There are three possibilities: Illinois state law, the Federal Rules of Civil Procedure, or Canadian law (which in this case would be the provincial law of Alberta, Alberta Rules of Court, Alberta Regulation 390/68). George thinks that Rule 4(e) (1988) requires the exclusive use of state (here, Illinois) methods of service when a federal court is effecting service beyond the territorial limits of the state in which it is sitting. This is not, however, what the rule says. The first sentence of Rule 4(e) (1988) provides:

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. (Emphasis added.)

As none of the federal statutes at issue here prescribe a method of service, the methods of service laid out in the rest of Rule 4 (1988) are proper. See Wright & Miller, sec. 1117 at 267 ("In the event that the [federal] statute does not set forth a method for serving process, service will be made under the appropriate subdivision of Rule 4."); Siegel, Practice Commentaries at C4-30 ("Absent a prescribed method in the federal statute, the regular Rule 4 methods govern."); Advisory Committee Notes to 1963 Amendment ("The clause added at the end of the first sentence [of section (e)] expressly adopts the view taken by commentators that, if no manner of service is prescribed in the statute or order, the service may be made in a manner stated in Rule 4.").

Rule 4(i) (1988) provides supplemental means of service to be used when the person to be served is in a foreign country: "When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made . . . [using the methods there specified]." (Emphasis added.) See also Wright & Miller, sec. 1133 at 369. The rule was designed to deal with difficulties that may not be encountered in purely domestic litigation and to accommodate the judicial policies and procedures of foreign countries. See Advisory Committee Notes to 1963 Amendment. By allowing use of these other means of service, Rule 4(i) (1988) and its current counterpart, Rule 4(f), also help plaintiffs to ensure that any eventual judgment will be enforceable in the foreign jurisdiction. See Wright & Miller, sec. 1133. It neither requires use of the foreign jurisdiction's methods of service nor forbids use of the federal rules.

The net result for George's case is that Rule 4(d)(1) (1988) was one proper method of service. That rule authorizes service on an individual either by personal delivery of a copy of the summons and complaint, or "by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein," or by delivering a copy of the summons and of the complaint to an authorized agent. Both parties agree that George resided in Apartment 806 of the condominium complex in Calgary. What is unclear is whether Bangs left the summons and complaint with "some person of suitable age and discretion then residing therein"--namely, McDonald, who everyone agrees also resided there.

Unfortunately, the evidence on that point is murky at best.

Bangs's affidavit provides little information regarding the precise circumstances under which he served the summons. Most importantly, there is almost nothing to suggest that Bangs was reasonable in believing that the man he served resided in Apartment 806 or was McDonald. (Bangs himself did not think it was George, nor is there any other evidence supporting that possibility.) Bangs's affidavit is silent as to whether the man was exiting the apartment when served, entering the apartment, or just passing by in the hallway. Other sections of the affidavit do more to undercut Bangs's identification of the man than to confirm it. When Bangs asked the man if he was McDonald or George, the man responded "No." Nothing in the affidavit or the record indicates that the man had any reason to suspect that Bangs was a process server and therefore lied to avoid being served. Moreover, Bangs describes the man as "5 foot 8 inches tall, dark thin balding hair, slight beard growth." For what it is worth, this description does not match McDonald's description of himself at that time (two inches taller, with red hair and a full red beard) in the document he furnished to the court. (Despite the deficiencies of that document, the district court did not say that it was refusing to rely upon it.) Finally, Bangs's affidavit gives only the inspector's statement that the man was a tenant of the apartment as a basis for Bangs's belief that the man resided there. The inspector's statement, however, is hearsay, and it is not corroborated by any other facts provided in the affidavit. Even if hearsay statements may appear in affidavits, but see Wilson v. Stinnett, 96 B.R. 301, 303 n.4 (E.D. Cal. 1989) (refusing to consider affidavit stating service was mailed because it was inadmissible hearsay), courts look at the presence of hearsay in determining how to weigh the evidence contained in contradictory affidavits. See United States v. Watkins, 168 F.2d 883, 885 (2d Cir. 1948) (holding proof of court's jurisdiction over defendant insufficient when based solely on hearsay statements regarding person's residence); Computerland Corp. v. Batac, Inc., 1989 WL 47294, *3 (S.D.N.Y.) (discounting affidavit based upon hearsay assertions). Robinson provides no evidence to suggest that Bangs reasonably relied on the inspector's statement. It might have been possible to secure an affidavit from the inspector swearing that he witnessed Bangs give the documents to a resident of the apartment, or better yet to McDonald. Robinson might have obtained a photograph of McDonald and obtained Bangs's affidavit that this was the person he served, assuming that was true. Bangs could have waited to see if the person

served was in fact a resident of Apartment 806. None of these things happened.

Unfortunately, the district court did not explain why it chose to overlook these problems. In the initial entry of judgment, the district court concluded that McDonald and George were served and that "the service of process . . . is proper and sufficient under Rule 4 of the Federal Rules of Civil Procedure." No reasons for that conclusion appear in the order. This does not necessarily mean that the court's initial decision to enter the default judgment in 1988 was wrong, given the fact that personal jurisdiction is sometimes tested in an adversarial proceeding only after the entry of such a judgment. See Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983) (holding evidentiary hearing regarding whether service was proper where court failed to determine if person who received summons was authorized to accept service for defendant); Hicklin v. Edwards, 226 F.2d 410, 413 & n.1 (8th Cir. 1955) (holding requirements of abode service not met where person who received summons was not a resident of the defendant's house); Hasenfus v. Corporate Air Services, 700 F.Supp. 58, 65-66 (D. D.C. 1988) (holding no proper abode service where summons left with someone believed to be a resident but who in fact was not); Scheerger v. Wiencek, 34 F.Supp. 805 (W.D. N.Y. 1940) (holding service insufficient where marshal's affidavit did not state where service was made or that person served was "of suitable age and discretion"). By the time the motion to set aside the default had been filed, however, the court had even more information, through George's own affidavit and McDonald's statement (despite its technical deficiencies, which may have been curable). Taken together, the glaring holes in Bangs's original affidavit and the additional information furnished by George and McDonald cast serious doubt on the question whether George was ever properly served.

In denying the motion to vacate the default judgment, the court decided that the requirements of Rule 4 (1988) were met because: (1) it found Bangs's account of service to be credible, (2) its independent investigation led it to believe that McDonald and George had reason to evade service, and (3) it found George's affidavits to be self-serving. There are several problems with this analysis. First, the court misconstrued Bangs's affidavit: the court somehow came to the conclusion that Bangs said that the man was standing "in" Apartment 806, whereas the affidavit actually says "I remained in the hallway and saw a white male. . . ." Second, the court's assumption that George was evading

service is not supported by any evidence in the record. From the record, it appears that after Robinson determined that George had moved to Canada, only one attempt at service was made. Robinson contends that this case is similar to those where the plaintiffs have made multiple attempts of service and were rebuffed at every turn. Cf. Swaim v. Moltan Co., 73 F.3d 711, 721 (7th Cir. 1996); Matter of State Exchange Finance Co., 896 F.2d 1104, 1105-06 (7th Cir. 1990). Counsel for Robinson explained at oral argument that they in fact have made several attempts over the past years to find George and have found him exceedingly difficult to pin down. That may be so, but Robinson did not support this position with evidence before the district court either in 1988 or in 1998. Without such evidence, the court had no basis for determining whether George has in fact evaded service and enforcement of pending judgments. Third, the district court based its refusal to disturb the default judgment on several cases where the complaint and summons were left with cooks, doormen, and other personal service providers. See, e.g., The Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 522, 524 (9th Cir. 1997); National Development Co. v. Triad Holding Corp., 930 F.2d 253 (2d Cir. 1991); Home-Stake Production Co. v. Talon Petroleum, C.A., 907 F.2d 1012 (1990). None of these cases is on point, however, because in each of those situations it was clear that the person who received the complaint and summons had some relationship to the person for whom service was intended and some duty to pass along mail and other documents to that person.

In this case, the evidence does not show who the person Bangs served was. It might have been McDonald, but it equally might have been a third (unidentified) resident of the apartment, a guest, or a passerby. This is not enough to support a finding of proper service in a default judgment situation. Cf. Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21 (1st Cir. 1992) (holding process insufficient where summons was received by another occupant of the defendant's apartment building). Were George not moving to vacate the default judgment as void (for lack of personal jurisdiction), the fact that George waited five months after allegedly learning about the default judgment before filing his motion to vacate might have provided Robinson with a means of blocking George's motion to vacate the default judgment. See Zuelkzke Tool & Eng. Co., Inc. v. Anderson Die Castings, Inc., 925 F.2d 226, 229 (7th Cir. 1991) ("The entry of a default judgment can be vacated under Rule 60(b) if a party shows (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense."). However, "under F[ed].

R. Civ. Pro. 60(b)(4), [George] may attack the judgment for lack of jurisdiction over the person at any time since a judgment rendered without jurisdiction over the person [is] void." Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808 (7th Cir. 1969); see also Wright, Miller, and Kane, sec. 2862 at 324 & n.3. Thus, the fact that George found out about the judgment in November 1997 but did not file his motion to vacate until March 1998 is irrelevant.

We have two conceivable ways of proceeding from here. One would be simply to order the district court to grant George's motion to set aside the default judgment and allow further proceedings to take place; the other would be to remand for an evidentiary hearing on the adequacy of the 1988 efforts to serve him. This is a close call, but in the end we have resolved it in favor of the latter approach for several reasons. First, if the 1988 service was indeed properly made, then the judgment the court entered is a proper one and it may be enforced in the United States (and perhaps abroad, depending on the view of the courts where George is located). Second, even now George has not agreed to waive service or to submit to the district court's jurisdiction; we understand his motion to set aside the default judgment as nothing more than that: he still wants the opportunity to contest the court's personal jurisdiction over him. He is certainly entitled to do so, but if there is any way to avoid starting this old case over from ground zero, it seems desirable to try to do so. It may turn out, given the time that has passed since Robinson attempted to serve George and the potential difficulty of locating and bringing to the hearing key witnesses who are citizens of another country (such as Bangs and Mr. Nauglar, the inspector present at the time of service), that the court cannot resolve this issue. In that case, it may still grant George's pending motion (because the burden of showing proper service is on Robinson) and allow Robinson now to attempt to perfect service on him. (Although George obviously has actual notice of the case by now, that is of course insufficient for service. See Swaim, 73 F.3d at 719; Mid-Continent Wood Products, Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991); see also Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 492 (3d Cir. 1993) ("Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service. . . . [A] motion that seeks to vacate an order for lack of proper service does not waive the defect in service.").)

For these reasons, we Reverse the district court's denial of George's Rule 55(c) and 60(b) motion and Remand for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

/1 See 18 U.S.C. sec. 1965(d) ("All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."); 15 U.S.C. sec. 77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place . . . and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."); 15 U.S.C. sec. 78aa ("Any suit or action to enforce any liability or duty created by this chapter . . . may be brought in any such district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.").

/2 It is also worth noting that both the United States and Canada are parties to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. See Fed. R. Civ. P. 4 notes. In the cases to which it applies--that is, civil or commercial cases, where service must actually take place abroad--the Convention is mandatory. See Volkswagenwerk AG v. Schlunk, 486 U.S. 694, 699 (1988). No one seems to have called the Convention to the district court's attention, and so we express no opinion on the question whether George has waived his right to object to service on the ground that the procedures Canada has specified for service within its territory were not followed, or the question whether this case involves the kind of "civil or commercial" matter to which the Convention applies.