**FIRST CHICAGO INTERNATIONAL, Appellant,**

v.

**UNITED EXCHANGE CO., LTD., et al.**

No. 87–7059.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1987.

Decided Jan. 19, 1988.

James vanR. Springer, with whom David I. Shapiro and Mary–Patrice Brown, Washington, D.C., were on the brief, for appellant. John T. Kotelly and Peter J. Kadzik, Washington, D.C., also entered appearances for appellant.

Eugene M. Propper, with whom Dwight D. Meier, W. Gregg Kerr and Robert C. Zimmer, Washington, D.C., were on the brief for appellees, Petra Bank and Petra Intern. Banking Corp. Richard G. Reed and D. Richard Funk also entered appearances for appellees.

Stephen P. Kling, with whom John K. Crummey, Annapolis, Md., was on the brief for appellees, United Exchange Co., Ltd., et al.

Before WALD, Chief Judge, SENTELLE, Circuit Judge, and GIBSON,[*] Senior Circuit Judge.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

The transactions that led to this lawsuit involved four principal parties. Appellant First Chicago International Bank (FCI) has its principal place of business in New York. Appellees are United Exchange Company, a currency trading company with its sole place of business in Jordan; Petra Bank (Petra), a Jordanian banking concern; and Petra International Banking Corporation (PIBC), a subsidiary of Petra with its sole place of business in the District of Columbia. FCI brought this action in the district court for the District of Columbia against United Exchange Company and some of its officers (collectively UNEXCO) and against Petra and PIBC. The complaint alleged that the defendants were liable for defrauding FCI of more than $23 million through an illegal check-kiting scheme. We affirm the trial judge's decision to dismiss the UNEXCO defendants for lack of personal jurisdiction. We reverse the trial court's decision, 655 F.Supp. 787, to grant summary judgment for Petra and PIBC on the ground that it was premature to do so without first permitting discovery on the merits.

## I. BACKGROUND

FCI alleges that between September and December 1985, UNEXCO, Petra and PIBC engaged in a check-kiting scheme involving the transfer of large sums of money between certain accounts at FCI in New York and PIBC in the District of Columbia. FCI claims that there were two distinct patterns of check-kiting activity. Under the first, UNEXCO allegedly drew checks on its account at FCI payable to Petra and to an individual named Hani Kattan. Petra and Kattan deposited these sums into accounts at PIBC in the District. Petra then wired funds back into UNEXCO's account at FCI. Similarly, Kattan wrote checks on his Petra account payable to Jamal Abu Samra Est. (JASE), a business owned by one of UNEXCO's officers, and JASE endorsed the checks over to UNEXCO for deposit in its account at FCI. Under the second pattern of kiting, UNEXCO allegedly wrote checks to various third parties, who then endorsed them over to JASE for deposit in its account at PIBC. JASE then reversed the process, resulting in deposits in UNEXCO's account at FCI. *See* Record Excerpts (R.E.) at 15–16.

In December 1985 UNEXCO deposited 29 checks into its account at FCI. All of the checks, which totaled approximately $28 million, were drawn on the JASE account at PIBC. Shortly after UNEXCO presented the checks to PIBC for payment, it was notified that the checks had been dishonored because of insufficient funds in the JASE account. In the interim, however, FCI had credited the checks to UNEXCO's account and permitted UNEXCO to withdraw a substantial portion of the

[*] Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

uncollected funds. The result was an overdraft of over $23 million in UNEXCO's account at FCI. *See id.* at 17.

FCI filed a complaint alleging, *inter alia,* conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) & (d), 1341, 1343. After FCI pursued limited discovery (specifically, some preliminary discovery unrelated to the merits and the deposition of former FCI employee Rafael M. Kamar) defendants UNEXCO and Othman moved to dismiss the complaint for lack of personal jurisdiction and *forum non conveniens.* Petra and PIBC joined in seeking dismissal on grounds of *forum non conveniens,* but otherwise conceded that this court had jurisdiction over them. Twelve days after oral argument on the jurisdictional motions, Petra and PIBC filed motions to dismiss on the merits; although the motions were brought under Federal Rules of Civil Procedure 12(b)(6) and 12(h)(2), they were considered by the court as motions for summary judgment, because of their reliance on matters outside the pleadings. *See* Memorandum Opinion (Mem.Op.) at 3 n. 1, 18 (Feb. 20, 1987). During the briefing of the various motions, defendants repeatedly objected to FCI's discovery requests on the ground that merits discovery was premature while the defendants' jurisdictional and forum motions were pending.[1] Apart from the deposition taken of Kamar, no discovery on the merits took place. *See* Appellant's Brief at 7–10.

The district court also raised *sua sponte,* and heard oral argument on, the question of whether the action could be transferred to the Southern District of New York. FCI's position was that the action could have been brought in the Southern District of New York and could be transferred there under 28 U.S.C. §§ 1404(a) or 1406, either in whole or by severing some defendants. In a memorandum opinion dated February 20, 1987, the district court granted the motions to dismiss the UNEXCO defendants for lack of jurisdiction as well as the motion to dismiss Petra and PIBC on the merits. It did not reach the questions of *forum non conveniens* or transfer to New York. *See* Mem.Op. at 21.

## II. PERSONAL JURISDICTIONAL OVER THE UNEXCO DEFENDANTS

■ Section 13–423(a)(1) of the District of Columbia long arm statute provides that a local court may have personal jurisdiction over a person as to a claim arising from that "person's transacting any business in the District of Columbia." This provision of the long-arm statute has been interpreted to be coextensive with the Constitution's due process limit. *See Crane v. Carr,* 814 F.2d 758, 762 (D.C.Cir.1987). In the instant case, FCI argues that the District may exercise jurisdiction over the UNEXCO defendants pursuant to § 13–423(a)(1).[2] We disagree. For the reasons that follow, we uphold the district court's conclusion that due process precludes the exercise of personal jurisdiction over the UNEXCO defendants.

FCI concedes that neither UNEXCO nor its officers maintained a bank account in the District relevant to this lawsuit; the only bank accounts that are implicated in the alleged check-kiting scheme were maintained at PIBC by Petra, JASE and Kattan. *See* Appellant's Brief at 40 n. 39. Nor does appellant contend that UNEXCO has its place of business in the District. Rather, FCI's position is that "the flow of checks and wire transfers into and out of the PIBC account in the District constituted the transaction of business in which [the

---

**1.** Motions for protective orders were filed by the UNEXCO defendants on June 23, 1986, June 25, 1986, September 5, 1986 and December 15, 1986; and by Petra and PIBC on June 26, 1986 and September 2, 1986.

**2.** By relying on § 13–423(a)(1) of the District's long-arm statute, FCI is claiming that special, as opposed to general, jurisdiction exists over the various defendants. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 785 (D.C.Cir.1983),

*cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984) (§ 13–423(a)(1) does not confer specific personal jurisdiction where the claims asserted are "unrelated to the acts forming the basis for personal jurisdiction"). Thus, the district court properly confined its jurisdictional analysis to those contacts of the defendants that could be said to have *given rise to the claims charged* in the plaintiff's complaint.

UNEXCO defendants] actively participated." Appellant's Reply Brief at 10. According to FCI, "[t]he continuous transfer of massive sums of money" through PIBC accounts in the District "was a calculated and intentional projection of UNEXCO's check-kiting business into the District of Columbia." Appellant's Brief at 40. Conclusory statements such as these, however, "[do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction," *Naartex*, 722 F.2d at 787, and FCI has failed to adduce any concrete evidence establishing that UNEXCO participated in an illegal check-kiting scheme or that it "purposefully avail[ed] itself of the privileges of conducting activities within [the District]." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The evidence in the record shows only that UNEXCO received checks drawn on accounts in the District and that UNEXCO wrote checks on its FCI account in New York that were eventually deposited in the District by third parties. As the district court noted, "UNEXCO is not alleged to have sent *any* checks directly to [PIBC]." Mem.Op. at 14 (emphasis added). Nor is there any indication whatsoever in the record that UNEXCO specifically arranged for the checks to be deposited in, or drawn on, the PIBC accounts in the District. As the Supreme Court has stated, the mere fact that a plaintiff accepts checks drawn on a bank in a particular forum "is of neglible significance" for determining whether the plaintiff has sufficient contacts with that forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Because FCI has not presented

evidence to substantiate its claim that UNEXCO "transacted business" with Petra or that UNEXCO had any unusual ties with the PIBC accounts in the District, we agree with the trial court that there is "no basis on which to hold that [the UNEXCO defendants] 'purposefully directed' their activities in any way towards the District." [3] Mem.Op. at 23.

FCI claims in the alternative that Petra and PIBC are co-conspirators of UNEXCO and that the District has jurisdiction over UNEXCO through the agency of Petra and PIBC. As noted, however, the general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts. *See, e.g., Chase v. Pan–Pacific Broadcasting, Inc.*, 617 F.Supp. 1414, 1415 n. 1 (D.D.C.1985); *Professional Investors Life Ins. Co. v. Roussel*, 445 F.Supp. 687, 691–92 (D.Kan.1978); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1068, at 345 (1987). Here, FCI has fallen far short of making out a *prima facie* case of the jurisdictional fact of a check-kiting conspiracy. There is no concrete evidence in the record indicating that there was a common plan—in the District or anywhere else—to defraud FCI and that UNEXCO and Petra and PIBC conspired and acted to further that plan. Nor has appellant brought forth evidence to establish that there was any connection between FCI's $23 million overdraft in New York and the transfer of funds through the PIBC accounts in the District. It is settled a plaintiff "must allege specific acts connecting [the] defendant with the forum," *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n. 5 (9th Cir.1980), and that the "bare

---

**3.** In *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors*, 647 F.2d 200 (D.C.Cir. 1981), this court found § 13–423(a)(1) personal jurisdiction where an Australian defendant shipped wine to an importer/intermediary with the expectation that the intermediary would distribute the wine in a region that included the District of Columbia. FCI relies on *Kaiser* for the proposition that a nonresident defendant (like UNEXCO) can be "transacting business" for jurisdictional purposes through a *nonresident intermediary* (like PIBC) that is transacting business in the District. *Kaiser*, however, is distinguishable from the present case in several

critical respects. In *Kaiser*, it was uncontested that the business of the foreign defendants involved shipping wine to an importer in the United States who in turn distributed the wine to stores in a region including the District. The only issue in Kaiser was whether such business activities amounted to "transacting business in the District." By contrast, in the present case, it is not established—indeed it is the main dispute—whether there was a "check-kiting business" in the District at all. Moreover, unlike the situation in *Kaiser*, it is by no means clear that Petra, JASE or Hattan were UNEXCO's "business intermediaries."

allegation" of conspiracy or agency is insufficient to establish personal jurisdiction. *E.g., McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983); *Lehigh Valley Indus. v. Birenbaum,* 527 F.2d 87, 93–94 (2d Cir.1975).[4]

Because FCI has failed to make a *prima facie* showing that UNEXCO has purposefully established minimum contacts with the District or that it participated in a conspiracy in the District to defraud FCI, we affirm the district court's ruling that the District does not have personal jurisdiction over the UNEXCO defendants.[5]

### III. THE SUMMARY JUDGMENT FOR PETRA AND PIBC

FCI challenges the district court's grant of summary judgment for Petra and PIBC. Specifically, FCI argues that (1) it was error to permit summary judgment before allowing any substantial merits discovery and (2) even on the existing record there are material issues of fact that render summary judgment inappropriate.

We do not reach the issue of whether the current record raises material questions of fact, because we agree with FCI that it was premature for the district court to grant summary judgment without first permitting discovery on the merits. Preliminarily, we note that the trial judge's grant of summary judgment was based on the erroneous assumption that FCI affirmatively waived discovery on the merits. *See*

Mem.Op. at 15, 18. At oral argument, the following exchange took place between the trial judge and Mr. Kotelly, counsel for FCI:

THE COURT: Mr. Kotelly, what discovery have you attempted or pursued that leads to the Court's determination of the question of whether or not it has jurisdiction of this case?

MR. KOTELLY: Your Honor, as to the question as to whether this Court has jurisdiction over this matter, we feel that we do not need any further discovery....

R.E. at 45–46. Mr. Kotelly, however, went on to make clear that the record was sufficient only as to the question of jurisdiction; he answered in the affirmative the court's inquiry about the plaintiff's desire for discovery on the merits:

THE COURT: So the discovery that you want goes essentially and solely to the question of the merits of the litigation, is that it?

MR. KOTELLY: That is correct [subject to the caveat that additional discovery might be needed as the jurisdiction in New York if the Court chose to transfer].

*Id.*[6] Thus, the trial court was mistaken when it stated that "[FCI] has asserted in oral argument that it is willing to rest on the present record in demonstrating

---

**4.** FCI relies largely on *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973), for the proposition that the District has jurisdiction over UNEXCO through its conspiracy with Petra and PIBC. This reliance is misplaced. Unlike the present case, the defendant in *Mandelkorn* did not challenge the allegations of conspiracy and of an overt act in furtherance of the conspiracy. Thus, the district court in *Mandelkorn* was able to *assume* that there was a conspiracy in the District, and the only issue it addressed was whether the long-arm statute could reach those members of the conspiracy who lacked direct contacts with the District. The *Mandelkorn* court held that there was a sufficient nexus between the co-conspirators and the District to confer personal jurisdiction. However, the court expressly emphasized that its holding would likely have been "quite different on this point, *if the allegations of the complaint were controverted,* or if the facts should develop oth-

erwise than as alleged." *Id.* at 697 (emphasis added). Obviously, in the present case, the allegation of a check-kiting conspiracy is seriously controverted.

**5.** We agree with the trial judge that New York is the appropriate forum for FCI's action against UNEXCO. We note that appellant has already filed a separate action in the Southern District of New York asserting the same and related claims against UNEXCO, JASE and others.

**6.** In addition, after Petra and PIBC filed their motions to dismiss on the merits, FCI filed an opposing motion (which was never argued) specifically contending that summary judgment was inappropriate because of the lack of merits discovery. *See* Plaintiff's Opposition to Motion to Dismiss of Defendants Petra Bank and [PIBC] for Failure to State a Claim Upon which Relief May Be Granted 9–10 (filed Nov. 6, 1986).

[PBIC's] complicity in the check-kiting scheme." Mem.Op. at 15.

More fundamentally, under the Federal Rules of Civil Procedure, when a Rule 12(b)(6) motion to dismiss is converted into a motion for summary judgment, all parties must be given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.Proc. 12(b). Furthermore, it is settled that the term "reasonable opportunity" includes the opportunity "to pursue reasonable discovery." *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (summary judgment appropriate only "after adequate time for discovery"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (plaintiff must have "a full opportunity to conduct discovery"); *Gay v. Wall,* 761 F.2d 175, 177–78 (4th Cir.1985); *Sames v. Gable,* 732 F.2d 49, 51–52 (3d Cir.1984). In the present case, it is clear that the district court failed to give FCI a reasonable opportunity to pursue merits discovery. When summary judgment was granted, virtually no discovery on the merits had occurred; the defendants had not responded to any of FCI's interrogatories or document requests, and a deposition subpoena to Kenneth J. Baiad, a former FCI employee implicated in the alleged check-kiting scheme, was still outstanding.

■ Petra and PIBC do not dispute that summary judgment is proper only after the plaintiff has been given adequate time for discovery. Petra and PIBC contend, however, that FCI cannot challenge the summary judgment order, because FCI failed to file a Rule 56(f) affidavit specifying the "facts it hoped to adduce by further discovery, and how any facts so adduced would be material." Brief for Petra/PIBC at 10. We disagree. Under Rule 56(f), the district court may defer ruling on a summary judgment motion and permit further discovery so that the nonmoving party may obtain the information necessary to show an issue of material fact in dispute. *See*

Fed.R.Civ.P. 56(f). The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968). Although several courts have held that filing an affidavit is necessary for the preservation of a Rule 56(f) contention,[7] other circuits have excused the absence of a Rule 56(f) filing on the ground that other documents filed by the plaintiff—such as opposing motions and outstanding discovery requests—sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit. *Sames v. Gable,* 732 F.2d 49, 51–52 & n. 3 (3d Cir.1984) (where there were outstanding document requests, plaintiff's failure to file was "not sufficiently egregious by warrant a non-merits resolution of the case"); *see also Cowan v. J.C. Penney Co.,* 790 F.2d 1529, 1532 (11th Cir.1986) (Rule 56 filing unnecessary where plaintiff had properly brought to court's attention that discovery was still outstanding). Given the particular facts before us, this latter, more flexible approach was the appropriate response.

Interrogatories and document requests addressed to each of the defendants and a deposition subpoena were outstanding at the time of the summary judgment decision. The district court thus had reason to know that FCI desired further discovery—indeed, it knew just what additional discovery FCI was seeking. Moreover, in response to the defendants' motions to dismiss, FCI had filed an Opposition as well as a Statement of a Material Facts As To Which There is a Genuine Dispute; the latter document made plain the use FCI sought to make of the information that still remained in the defendants' hands. We find that the combination of FCI's opposition to dismissal on the merits, the accompanying Statement of Material Issues, and the outstanding discovery requests served

---

**7.** *See, e.g., Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 780 n. 4 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *Gray v. Udevitz,* 656 F.2d 588, 592 (10th Cir.1971).

as an adequate substitute for a Rule 56(f) affidavit.

In addition, we find it significant that discovery on the merits would undoubtedly have long since occurred in this case, if not for the actions of the defendants. There was nothing improper about the way in which FCI served its interrogatories, document requests and subpoena. Petra and PIBC, however, objected to all of FCI's discovery requests on the ground that discovery was premature while their motions challenging personal jurisdiction and forum were pending. Counsel for Petra and PIBC reiterated at the October 17, 1986 hearing that "we don't think that discovery should take place until the motions have been resolved." R.E. at 42. FCI filed motions to oppose the protective order motions—but to little avail. Because the district court (with one exception—allowing the deposition of Kamar) did not rule on the protective order motions until it dismissed the case entirely, no discovery on the merits was ever possible.

In sum, given the particular circumstances of this case, we do not think the district court's summary judgment was automatically justified by FCI's failure to file a Rule 56 affidavit. Given that (1) the trial court erred when it assumed that FCI had waived merits discovery; (2) FCI was not at fault in failing to conduct discovery on the merits; and (3) the outstanding interrogatories, document requests and deposition subpoena were sufficient to inform the district court that further discovery was needed, we find that FCI's failure to file a Rule 56 affidavit should not preclude it from challenging the district court's grant of summary judgment. Accordingly, because in the absence of a waiver, summary judgment is appropriate only after plaintiff has had a full opportunity to conduct discovery, we conclude that it was premature for the district court to dismiss the case against Petra and PIBC without first permitting discovery on the merits.

*Reversed in part and affirmed in part.*