United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 28, 2001 Decided December 21, 2001 

 No. 00-7188

 Second Amendment Foundation, et al., 
 Appellants

 v.

 United States Conference of Mayors, et al., 
 Appellees

 Appeal from the United States District 
 Court for the District of Columbia

 (No. 99cv03181)

 Richard E. Gardiner argued the cause and filed the briefs 
for appellants.

 Joseph M. Sellers argued the cause for appellees. With 
him on the brief was Richard S. Lewis. Jack D. Maistros, 
Keith Vernon, Laurie A. Holmes, James B. Meyer, William 
A. Walker and Peter M. Kelley entered appearances.

 Before: Edwards, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Tatel.

 Tatel, Circuit Judge: In this action, firearm consumers 
and others, alleging deprivation of their First, Second, and 
Ninth Amendment rights, bring civil conspiracy claims 
against the mayors of twenty-two cities that filed damage 
actions against gun manufacturers and dealers. The question 
presented in this appeal is whether the mayors, none of whom 
resides in the District of Columbia, subjected themselves to 
suit here by discussing their litigation at a meeting held in 
the District. Because we agree with the district court that 
attending the meeting was insufficient to trigger the District 
of Columbia long-arm statute, we affirm its dismissal of the 
complaint.

 I.

 Beginning in 1998, cities across the country, including 
Boston, Chicago, New Orleans, and San Francisco, filed suits 
charging firearm manufacturers and dealers with creating 
and maintaining a public nuisance. According to the cities, 
the manufacturers and dealers "knowingly and recklessly 
market, distribute, promote, design and/or sell firearms in 
ways that facilitate the criminal use of firearms; circumvent 
federal, state and local laws; deceive the public about the 
dangers of firearm possession; fail to incorporate reasonable 
firearm safety features and warnings; and inadequately dis-
close the risks associated with firearms." Appellees' Br. at 3.

 Appellants, the Second Amendment Foundation, Inc., the 
Shooters Committee on Political Education, Inc., and several 
firearm consumers and licensees who are members of one or 
both of these organizations--throughout this opinion, we shall 
refer to appellants as "SAF"--filed suit under 42 U.S.C. 
s 1983 in the United States District Court for the District of 
Columbia against the mayors of the cities that had sued gun 
manufacturers. SAF alleges that the mayors "conspired 
together" to bring these suits "for the purpose of bankrupting 
and otherwise harming" the manufacturers and dealers "as a 
result of the litigation costs of defending such civil actions." 

Amended Compl. p 10. SAF further alleges that the lawsuits 
caused the manufacturers and dealers to raise prices or 
curtail sales of firearms, thereby violating SAF's First, Sec-
ond, and Ninth Amendment rights, as well as its "right to 
engage in, and obtain the benefits of, interstate commerce." 
Amended Compl. p p 15, 17, 19.

 The mayors, pointing out that none of them lives in the 
District of Columbia, moved to dismiss for lack of personal 
jurisdiction. In response, SAF asserted that the district 
court had jurisdiction under the District of Columbia long-
arm statute, which accords jurisdiction over persons who 
"transact[ ] business" in the District "directly or by an 
agent[.]" D.C. Code Ann. s 13-423(a)(1) (1995). As evidence 
that the mayors transacted business here, SAF pointed to the 
United States Conference of Mayors' web site, which reports 
that at the Conference's 67th Winter Meeting, held in the 
District of Columbia, the mayors discussed their litigation 
against gun manufacturers. According to the web site, "[i]n a 
session closed to the public, Philadelphia Mayor Edward 
Rendell led mayors in a discussion of gun-related legislative 
and litigation strategies." USCM 67th Winter Meeting, May-
ors Exchange Information on Guns Issues, http://www.us 
mayors.org/USCM/meeting/jan27.htm (last visited Nov. 16, 
2001). Mayor Rendell chairs the Conference's Gun Violence 
Task Force. 1999 Winter Meeting, Mayors Keep Focus on 
Gun Safety and Industry Responsibility, http: 
//www.usmayors.org/USCM/us_mayor_newspaper/documents/ 
02_08_99/wintermeeting/8gun.htm (last visited Nov. 16, 2001). 
In another session, the mayors "focused on lawsuits previous-
ly brought against the gun industry by the cities of New 
Orleans and Chicago, and two new suits filed by Miami-Dade 
County and Bridgeport...." Id. The web site identifies 
four of the twenty-two mayors sued in this case as having 
participated in this session. Id.

 Concluding that SAF's allegations fell "far short" of "the 
prima facie showing necessary to carry the burden of estab-
lishing personal jurisdiction," the district court dismissed the 
complaint pursuant to Federal Rule of Civil Procedure 
12(b)(2). 3/13/00 Mot. Hr'g Tr. at 21. SAF now appeals. 

Because the underlying facts are undisputed, this appeal 
presents only legal issues, so our review is de novo. See U.S. 
Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 
135, 150-51 (2d Cir. 2001) (stating rule for review of Rule 
12(b)(2) dismissal).

 II.

 In addition to defending the district court's dismissal for 
lack of personal jurisdiction, the mayors argue that SAF lacks 
Article III standing to maintain this action. Applying the 
principle that "there is no unyielding jurisdictional hierar-
chy," Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 
(1999), we begin and end with personal jurisdiction.

 Under the District's long-arm statute, "[a] District of Co-
lumbia court may exercise personal jurisdiction over a person, 
who acts directly or by an agent, as to a claim for relief 
arising from the person's ... transacting any business in the 
District of Columbia[.]" D.C. Code Ann. s 13-423(a)(1) 
(1995). SAF relies on the "conspiracy theory" of personal 
jurisdiction, an application of long-arm jurisdiction pursuant 
to which a defendant's contacts with the forum consist of the 
defendant's conspiratorial activities. See Jungquist v. Sheik 
Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1030-31 (D.C. 
Cir. 1997) (applying conspiracy theory of personal jurisdiction 
to long-arm statute's "transacting business" provision); Ed-
mond v. United States Postal Serv. Gen. Counsel, 949 F.2d 
415, 424-425 (D.C. Cir. 1991) (discussing application of con-
spiracy theory of personal jurisdiction to long-arm statute's 
"causing tortious injury in the District" provision). Persons 
who enter the forum and engage in conspiratorial acts are 
deemed to "transact business" there "directly"; co-
conspirators who never enter the forum are deemed to 
"transact business" there "by an agent." D.C. Code Ann. 
s 13-423(a)(1) (1995); see Jungquist, 115 F.3d at 1030-31 
(discussing theory that defendants satisfied either "transact-
ing business" or "contracting to supply services" provision by 
conspiring to defraud plaintiff and breach contract, and by 
performing overt acts in furtherance of conspiracy, in the 

District, and discussing extension of jurisdiction to co-
conspirators who did not enter the District); First Chicago 
Int'l v. United Exch. Co., 836 F.2d 1375, 1377-78 (D.C. Cir. 
1988) (discussing theory that defendants satisfied "transact-
ing business" provision by directing checks and wire transfers 
into and out of the District in furtherance of a check-kiting 
conspiracy, and discussing extension of jurisdiction to co-
conspirator who did not enter the District).

 "[T]he general rule ... that a plaintiff must make a prima 
facie showing of the pertinent jurisdictional facts[ ]" applies to 
conspiracy-based jurisdiction. Id. at 1378. To prevail on its 
jurisdictional theory, therefore, SAF must make a prima facie 
showing of civil conspiracy. In the District of Columbia, civil 
conspiracy has four elements: "(1) an agreement between two 
or more persons; (2) to participate in an unlawful act, or a 
lawful act in an unlawful manner; (3) an injury caused by an 
unlawful overt act performed by one of the parties to the 
agreement; (4) which overt act was done pursuant to and in 
furtherance of the common scheme." Halberstam v. Welch, 
705 F.2d 472, 477 (D.C. Cir. 1983). Since the "bare allegation 
of conspiracy or agency is insufficient to establish personal 
jurisdiction[,]" "a plaintiff must allege specific acts connecting 
[the] defendant with the forum[.]" First Chicago, 836 F.2d at 
1378 (internal quotation marks and citations omitted).

 According to SAF, the four mayors who attended the 67th 
Winter Meeting and the eighteen absent mayors whose cities 
also filed suit transacted business in the District within the 
meaning of the long-arm statute because they "conspired 
together" to "bankrupt[ ] and otherwise harm[ ]" gun manu-
facturers and dealers. Even assuming that suing manufac-
turers in order to bankrupt them would be unlawful, SAF has 
alleged no "specific acts" showing that the mayors agreed to 
file suit, let alone with such a purpose. The allegation that 
the mayors "conspired together" represents nothing more 
than a legal conclusion, which we have held "does not consti-
tute the prima facie showing necessary to carry the burden of 
establishing personal jurisdiction." Naartex Consulting 
Corp. v. Watt, 722 F.2d 779, 787-88 (D.C. Cir. 1983) (holding 
that plaintiff's characterization of defendants as "alleged co-

conspirators" was insufficient "conclusionary statement"). 
The web site report that Mayor Rendell "led mayors in a 
discussion of legislative and litigation strategies" adds noth-
ing. That the mayors discussed these strategies fails to 
show, as SAF must, that the mayors agreed to file lawsuits 
with an unlawful objective. Were we to conclude otherwise, 
people would be unable to meet in the nation's capital to 
discuss issues of concern without subjecting themselves to the 
jurisdiction of D.C. courts.

 SAF also argues that the fact that multiple cities filed suit 
shows that the mayors entered into a conspiratorial agree-
ment at the 67th Winter Meeting. Although SAF offered this 
argument in the district court and here at oral argument, it 
failed to do so in its opening brief, so we need not consider it. 
See, e.g., Tourus Records, Inc. v. DEA, 259 F.3d 731, 739 n.13 
(D.C. Cir. 2001). In any event, the argument is unpersuasive. 
To begin with, some cities filed suit before the 67th Winter 
Meeting occurred. Moreover, the fact that the cities filed 
suit does not support an inference either that the mayors 
agreed to do so or, more to the point, that they reached any 
such agreement at a particular time and place and for the 
purpose of bankrupting gun manufacturers.

 For all these reasons, we agree with the district court that 
SAF has failed to make a prima facie showing of the first two 
elements of civil conspiracy: "(1) an agreement ... (2) to 
participate in an unlawful act, or a lawful act in an unlawful 
manner." Halberstam, 705 F.2d at 477. We thus need not 
consider the mayors' argument that SAF failed to meet its 
burden as to the remaining elements of conspiracy, see id., 
nor their claim that exercising personal jurisdiction over them 
would violate principles of due process, see First Chicago, 836 
F.2d at 1377 (observing that long-arm statute's "transacting 
business" provision "has been interpreted to be coextensive 
with the Constitution's due process limit").

 III.

 SAF next argues that even if it failed to establish a prima 
facie case, the district court erred in dismissing its suit before 

SAF had an opportunity to take jurisdictional discovery. 
Certainly, "[a] plaintiff faced with a motion to dismiss for lack 
of personal jurisdiction is entitled to reasonable discovery[.]" 
El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. 
Cir. 1996). To get discovery, however, one must ask for it. 
SAF's only mention of jurisdictional discovery occurred dur-
ing the hearing on the mayors' motion to dismiss. Asked by 
the district court if SAF had evidentiary support for its 
allegation of a conspiratorial agreement, counsel responded: 
"[A]fter discovery ... we fully expect that there will be 
evidence developed that there was an agreement between the 
parties.... I believe we will get that information in discov-
ery." 3/13/00 Mot. Hr'g Tr. at 9, 13. But SAF neither moved 
for an opportunity to serve jurisdictional discovery nor de-
fended against the mayors' motion to dismiss on the ground 
that it had not yet taken such discovery. Not surprisingly, 
the district court never entered a discovery order. Under 
these circumstances, we will not consider SAF's argument 
that the district court somehow erroneously denied jurisdic-
tional discovery. See, e.g., Tomasello v. Rubin, 167 F.3d 612, 
618 (D.C. Cir. 1999) ("Absent exceptional circumstances, the 
court of appeals is not a forum in which a litigant can present 
legal theories that it neglected to raise in a timely manner in 
proceedings below." (internal quotation marks and citation 
omitted)).

 The decision of the district court is affirmed.

 So ordered.