**BPA INTERNATIONAL, INC., et al., Plaintiffs,**

**v.**

**KINGDOM OF SWEDEN, et al., Defendants.**

No. CIV.A.1:02–1025 RMC.

United States District Court, District of Columbia.

Sept. 5, 2003.

Joel D. Joseph, Bethesda, MD, for Plaintiffs.

Ralph Arthur Taylor, Jr., Kevin B. Bedell, Dorsey & Whitney, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

David Blackwell and Lisa Renda each own fifty percent (50%) of the stock of BPA International, Inc., a New York corporation that is a consultancy firm specializing in the development of telephone call centers. BPA opened a Swedish branch in 2001. Plaintiffs allege that defendant Validation, A.B., a Swedish corporation ("Validation"),[1] initiated negotiations in October 2001 to acquire BPA's Swedish branch but used the information gained through those negotiations to learn the business, access confidential materials, and obtain copies of copyrighted publications. Validation is alleged to have abruptly ceased negotiations and effectively taken control of BPA's Swedish operations by hiring BPA's Managing Director; taking over negotiations of pending BPA business; using BPA's copyrighted publications, client lists and other materials; and using BPA's confidential files, notes and contacts. *See* Compl. ¶ 16.

BPA International, Mr. Blackwell and Ms. Renda sue for compensatory damages, the return of their property, a cease and desist order on using BPA materials and publications, and punitive damages.

Defendant Kingdom of Sweden ("Sweden") allegedly owns and controls defendant Telia, A.B. ("Telia") which, in turn, allegedly owns and controls Validation. Defendants Sweden and Telia have moved to dismiss, and BPA International has opposed their motions.

After carefully reviewing the complaint, the motions and the oppositions thereto, the Court will grant Sweden's and Telia's motions to dismiss.

### Background Facts

The facts are taken from the complaint and the affidavits of the parties.

Mr. Blackwell is a citizen of the United Kingdom and Ms. Renda is a citizen of New York. They each own 50% of the common stock of BPA International. Compl. ¶¶ 4, 5. BPA opened a branch office in Stockholm, Sweden, in 2001, named BPA Scandinavia. Validation initiated ne-

---

1. A.B. is an acronym for Aktie Bolog, or share company, in Swedish. Compl. ¶ 7. Under Rule 4(m) of the Federal Rules of Civil Procedure, if the plaintiff has not served the defendant with a summons and a complaint within 120 days after the filing of the complaint, the Court may dismiss the action. The Court has no record that Validation has ever been served with the Complaint, which Plaintiffs filed on May 28, 2002. Therefore, the Court orders the plaintiffs to show cause why the Court should not *sua sponte* dismiss the action without prejudice as to Validation.

gotiations to acquire BPA Scandinavia in October 2001 and the parties executed an interim agreement allowing them to work together until a final agreement was reached. The interim agreement specified a purchase price and a royalty for use of BPA International's copyrighted publications. Compl. ¶ 13. The negotiations and interim agreement were allegedly a subterfuge for seizure of BPA Scandinavia assets. Validation is alleged to have cut off negotiations, hired BPA Scandinavia's Managing Director, and taken over its business. Compl. ¶ 16. Without a Managing Director, BPA Scandinavia was unable to operate under the laws of Sweden. Compl. ¶ 17. Defendants are all alleged to have used BPA International's copyrighted materials, client lists and confidential information and to have taken its property without compensation. Compl. ¶ 18, 19.

Sweden owns an unspecified interest in Telia, the Swedish national telephone company. While the complaint alleges that Telia is actively engaged in business in Washington, D.C., and throughout the United States, Compl. ¶ 7, Telia has submitted affidavit evidence that Telia does not do business in the United States. These affidavits establish that Telia's principal place of business is Farsta, Sweden. Telia does have a wholly-owned U.S. subsidiary, Telia International Carrier, Inc. ("TICI"). TICI is a Delaware corporation located in Reston, Virginia. BPA International cites to what it alleges is Telia's website as proof that Telia engages in business in the United States, but it is actually TICI's website that BPA International identifies. Telia avers without contradiction that there are no shared directors or officers between the corporations, that TICI maintains separate financial records and account books, and that Telia is not involved in TICI's day-to-day operations. TICI is not an agent of Telia

authorized to receive service of court process in the United States.

Validation is a Swedish company alleged to be actively engaged in business in Washington, D.C. Validation is alleged to be "owned and controlled by Telia, A.B. which in turn is controlled by Sweden." Compl. ¶ 8. The affidavits submitted by Telia establish, without contradiction, that Telia owns 49% of Telefos AB, another Swedish company. Telefos, and not Telia, owns the defendant Validation. Telia asserts that it does not directly own any interest in Validation and does not elect or appoint any directors or officers to Validation. Telia and Telefos do not share directors, financial records or reports, or other operational aspects. Telia is entitled to elect only two of the seven directors of Telefos.

The complaint asserts that Telia and Validation are engaged in commercial activities in telecommunications and that, since they are "owned and controlled by Sweden," Sweden is also engaged in commercial activity. Comp. ¶ 22. The property allegedly taken by the defendants diminished the value of BPA International's assets and thereby allegedly had a direct effect in the United States. Compl. ¶ 23.

Jurisdiction is posited on 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), 1350 (alien tort) and 1605 (Foreign Sovereign Immunity Act ("FSIA")), and the Berne Convention for the Protection of Literary and Artistic Works.

### Standard of Review

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may raise by motion the threshold defense of lack of subject matter jurisdiction. Once subject matter jurisdiction is challenged, the plaintiff has the burden of establishing the jurisdictional facts by competent proof. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189,

56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Soeken v. Herman,* 35 F.Supp.2d 99, 102 (D.D.C. 1999); *United States v. Nat'l Acad. of Sciences,* Civ. A. No. 90–2568, 1992 WL 247587 *4 (D.D.C. Sept. 15, 1992). The submission of matters outside the pleadings does not convert a Rule 12(b)(1) motion to one for summary judgment but, rather, permits the court to conduct an independent review of the evidence to resolve factual disputes concerning whether subject matter jurisdiction exists. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Matthews v. Automated Bus. Sys. & Services,* 558 A.2d 1175, 1179 (D.C.1989).

In addition, a party may assert lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2) and insufficiency of process under FED. R. CIV. P. 12(b)(4). By considering matters outside of the pleadings in evaluating motions brought under these subsections, the Court does not convert them into motions for summary judgment. *See Haase v. Sessions,* 835 F.2d 902, 905 (D.C.Cir.1987) ("the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment.") (emphasis in original).

### Analysis

Telia argues that the Court has no personal jurisdiction over it, process was not properly served, the complaint fails to state a claim on which relief may be granted, and the case should be brought, if anywhere at all, in Sweden where all the action occurred. The Court agrees that it has no personal jurisdiction over Telia, that process was not properly served, that the complaint fails to state a claim under FSIA, and that the doctrine of *forum non conveniens* applies to make Sweden the much better location for any suit.

Sweden argues that the complaint should be dismissed as to it because FSIA

does not permit the suit, there has been no effective service of process, and the proper forum is Sweden. The Court agrees.

### A. *Foreign Sovereign Immunity Act*

Under FSIA, a foreign state and its instrumentalities are "presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993); *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 87 (D.C.Cir.2002). FSIA contains specified and limited statutory exceptions to this presumptive immunity. These exceptions "provide[ ] the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson,* 507 U.S. at 355, 113 S.Ct. 1471 (quoting *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989)).

BPA International rests its FSIA claim on the third clause of the commercial activity exception found in 28 U.S.C. § 1605(a)(2). This exception provides courts with jurisdiction over any case

> in which the action is based... upon an act outside the territory of the United States in connection with a commercial activity of a foreign state elsewhere and that causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

Plaintiffs' claims against Sweden fail under the first part of this subsection because the allegations that Sweden has engaged in any commercial activity fail as a matter of law. The complaint alleges that Sweden engages in commercial activity *because* it allegedly owns and controls Telia and Validation, which are themselves admittedly engaged in commercial activities. Comp. ¶ 22. However, under FSIA "instrumentalities and agencies are accord-

ed a presumption of independent status." *Foremost–McKesson, Inc. v. Islamic Rep. of Iran,* 905 F.2d 438, 446 (D.C.Cir.1990). This presumption can only be overcome if a plaintiff alleges facts to show that the sovereign exerted sufficient control over the instrumentality to create an agency relationship. *Id.* at 447. The Complaint and BPA International's Oppositions have failed to allege any facts to overcome the presumption of independence; they have also failed to rebut Telia's affidavits that further establish the extremely tenuous relationship between Sweden and the alleged conduct. The undisputed facts show that the major actor was Validation, which is a subsidiary of Telefos, which is a company in which Telia holds a minority interest and which, in turn, is a company in which Sweden holds an interest. No action by Sweden is alleged. There is no allegation of facts to show an agency relationship between Validation and Sweden and Sweden therefore is not liable for Validation's alleged wrong-doings. For purposes of the motion to dismiss, the Court will assume that Telia is an instrumentality of Sweden, without deciding that issue. Instrumentalities of foreign nations are accorded the full protections of a sovereign under FSIA, 28 U.S.C. § 1603(a), (b), so BPA International must allege specific facts sufficient to show an agency relationship between Telia and Validation for the Court to entertain a FSIA suit against Telia. Telia's detailed and sworn evidence of the relationships among it, Telefos and Validation are not challenged by BPA International and the plaintiffs have not alleged facts to otherwise show an agency relationship between Telia and Validation.

■ A second requirement of a FSIA suit under this exception is an effect in the United States from activities by a foreign sovereign. The complaint contends that the alleged seizure of Plaintiffs' assets "has a direct effect in the United States by diminishing the value of assets owned by BPA International, Inc. and harming its ability to earn a profit." Compl. ¶ 23. A financial loss in the United States, when all the acts giving rise to the claim occurred outside this country, is insufficient to show the "direct effect" in the United States that FSIA requires. *See Ge v. Peng,* 201 F.Supp.2d 14, 24–25 (D.D.C. 2000); *Gregorian v. Izvestia,* 871 F.2d 1515, 1527 (9th Cir.1989). For this additional reason, the Plaintiffs' FSIA claims fail.

■ Perhaps recognizing these infirmities after submission of Telia's affidavits, Plaintiffs have changed their FSIA theory in their Opposition to Telia's Motion to Dismiss. Now they rely on the first subsection of 28 U.S.C. § 1605(a)(2), which provides jurisdiction over any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." *See* Opp. to Telia's Motion to Dismiss at 3–4. BPA International relies on *Siderman v. Republic of Argentina,* 965 F.2d 699 (9th Cir.1992), to demonstrate how a foreign nation can be engaged in commercial activity in the United States. In *Siderman,* Argentina expropriated a private hotel in that country and then advertised for U.S. guests in U.S. newspapers, accepted U.S. guests at the hotel, and billed them through their U.S. credit card accounts. This activity was deemed commercial activity carried on in the United States, based on the original act of expropriation, and warranted jurisdiction in U.S. courts.

BPA International argues that this is an expropriation case within the meaning of *Siderman.* "The critical inquiry is whether there is 'a nexus between the defendant's commercial activity in the United States and the plaintiff's grievances." *Siderman,* 965 F.2d at 709. BPA Interna-

tional argues that it has established the necessary "nexus" because the allegedly expropriated accounts were clients who had substantial contacts in the United States. This argument confuses the nature of FSIA jurisdiction. The question is whether Telia or Sweden engaged in commercial activity in the United States, not whether the alleged commercial activity in Sweden affected others, not parties to this suit, within the United States. The complaint allegations demonstrate that the major actor was Validation. There appears to be a very attenuated relationship, if any, between Sweden and Validation. By all appearances, Sweden had no role in these facts in Sweden—much less in the United States—and cannot be said to have expropriated anything from BPA International or carried on any business in the United States. Only Telia is alleged to engage in commercial activity in this country through its wholly-owned subsidiary, TICI, but that allegation fails to provide jurisdiction over Telia and certainly is insufficient to reach Sweden. There is no claim that a nexus exists between TICI and BPA International's claims of harm in Sweden. Lastly, even assuming Telia is an instrumentality of Sweden, there are insufficient facts alleged by plaintiffs to create a nexus between Telia and Validation on which one might base FSIA liability for Validation's actions.

▮▮▮▮ Lastly, BPA International argues that "traditional jurisdictional criteria, such as minimum contacts, do not apply" for cases brought under FSIA. *See* Opp. to Telia's Motion to Dismiss at 3; *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d at 82. *Price* interpreted and applied the 1996 amendments to FSIA that were enacted as part of the Antiterrorism and Effective Death Penalty Act. *Id.* at 88. Before those amendments, FSIA clearly required a nexus between a

plaintiff's claims and the United States, comparable to minimum contacts. *Id.* at 89. The 1996 amendments relaxed these requirements for claims under a new exception to the presumption of immunity for foreign nations—claims such as torture, hostage taking and extrajudicial killing. *Id.* at 90; *see also* 28 U.S.C. § 1605(a)(7). Neither the amendments nor the discussion in *Price* changed the pre-existing requirements that there must be some connection between a plaintiff's claims and the United States for a U.S. court to assert jurisdiction over a foreign government or its instrumentality with respect to commercial claims under 28 U.S.C. § 1605(a)(2). Plaintiffs claims against Sweden and Telia (assuming without deciding that it is an instrumentality of Sweden) fail because no FSIA exception applies.

### B. *Personal Jurisdiction over Telia*

▮▮▮ BPA International does not counter the specific facts in Telia's affidavits about its lack of business activity in the United States. Rather, BPA International argues that TICI has laid cable in Washington, D.C. and, since TICI is a subsidiary of Telia, Telia therefore has done business here. It seeks jurisdictional discovery to investigate the relationship between Telia and TICI. In addition, BPA International seeks jurisdictional discovery over the degree of control exercised by Sweden over Telia. These arguments misapply relevant standards.

▮▮▮ The only allegation in the complaint with respect to jurisdiction over Telia is the allegation that "Telia ... is ... actively engaged in business in Washington, D.C." Compl. ¶ 7. The only evidence to support this statement is information from the Internet about cable laid by TICI in Washington, D.C., not Telia. BPA International produces no evidence

to counter the sworn affidavits submitted by Telia that there are no shared officers or directors between Telia and TICI, financial records and account books are maintained separately, and Telia has no role in TICI's day-to-day operations or corporate governance. In short, assuming Telia has liability for the acts of Validation, BPA International has no evidence to pierce the corporate veil between TICI and Telia. In response to the motion to dismiss, BPA International needed to "'make a *prima facie* showing of the pertinent jurisdictional facts' by alleging 'specific acts connecting [Telia] with the forum.'" *Richard v. Bell Atl. Corp.* 946 F.Supp. 54, 67 (D.D.C.1996) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988)). The mere corporate relationship between Telia and TICI, without more, does not suffice. *See Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C.Cir.1998) ("[B]ecause 'plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for ... [jurisdictional] discovery ... must be denied.'") (alteration in original).

■ The Court finds no general jurisdiction in the District of Columbia over Telia. It is conceded that Telia is not "domiciled in, organized under the laws of, or maintaining ... its principal place of business in, the District of Columbia." D.C.Code Ann. § 13–422; Compl. ¶ 7 (alleging that Telia is "a Swedish company."). Telia does not have a "continuing corporate presence in the forum ... directed at advancing the corporation's objectives." *El–Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C.Cir.1996) (citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C.1981)). The long-arm statute of the District of Columbia, D.C.Code Ann. § 12–243 offers no haven. Telia has no real property in the District of Columbia

(13–423(a)(5)); did not contract to insure something in the District of Columbia (§ 13–423(a)(6)); does not have a marital or parent-and-child relationship in the District of Columbia (§ 13–423(a)(7)); did not contract to supply services in the District of Columbia (§ 13–423(a)(2)); did not cause injury in the District of Columbia by a local act or omission (§ 13–423(a)(3)); and caused no injury in the District of Columbia by an act or omission elsewhere (§ 13–423(a)(4)). In this regard, it is noted that no harm occurred in the District of Columbia. BPA International is a New York corporation, Ms. Renda resides in New York, Mr. Blackwell resides in the United Kingdom, and BPA Scandinavia is a Swedish corporation.

■ A court has specific jurisdiction when the cause of action arises out of or has a substantial connection with the defendant's activity in the court's district. *See Hanson v. Denckla*, 357 U.S. 235, 250–53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Even if Telia did transact business here, all actions alleged to have caused plaintiffs' injury occurred elsewhere. Since neither the plaintiffs nor the defendants reside in the District of Columbia, no action was taken here to harm the plaintiffs, and no consequence of the alleged actions has been shown to have impact in the District of Columbia, there is no specific jurisdiction here.

BPA International additionally argues that jurisdiction exists under the FSIA because Sweden controls Telia. Assuming without deciding that Sweden controls Telia, this argument lacks merit because, as stated *supra*, BPA International has failed to establish that any exception to FSIA applies.

C. *Service of Process*

■ As a separate basis for dismissal, Telia and Sweden both argue that they

have not been effectively or properly served with legal papers. Proper service is essential for the court to "exercise power over" a party. *Murphy Bros., Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999).

BPA International served Telia by mailing the complaint and summons to the administrative assistant of TICI's chief executive officer. Within the United States, service is effective on a corporation upon "delivery" of the summons and complaint "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1). Mail to the employee of a distinct corporate subsidiary does not fulfill any part of this requirement. In addition, service on a subsidiary does not constitute service on the parent, *see Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 237 (D.Del.1984), unless they are so intertwined that the subsidiary may be deemed an alter ego or agent. *See Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir.2001) (There must be "such unity of interest and ownership that the separate personalities [of the two corporate entities] no longer exist") (quoting *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (alteration in original)).

BPA International does not dispute application of this rule. Instead, it argues that "Telia received actual notice of the summons and complaint," which is enough for service under FSIA. *See* Opp. to Telia's Motion to Dismiss at 1; 28 U.S.C. § 1608(b); *Straub v. A.P. Green, Inc.*, 38 F.3d 448, 453 (9th Cir.1994). Actual notice does not fulfill the requirements of Rule 4(h)(1). Since the plaintiffs have failed to establish that this case arises under FSIA, and service has not met the requirements of the Rule, the Court concludes that service has not been effected as to Telia and the complaint must be dismissed for that reason as well.

For service on Sweden, Plaintiffs mailed an English language copy of the summons and complaint to Sweden's embassy in Washington, D.C. Service in this manner does not satisfy any of the requirements for service of process on a foreign sovereign under FED. R. CIV. P. 4(j)(1) and 28 U.S.C. § 1608(a). BPA International effectively concedes this point, arguing in Opposition to Sweden's Motion to Dismiss that it substantially complied with service under FSIA and Sweden had actual notice, so that any defects in service should be excused. BPA International cites *Straub v. A.P. Green, Inc.*, 38 F.3d 448, 453 (9th Cir.1994) as support for this proposition. *Straub* concerned service upon an agency or instrumentality of a foreign state under 28 U.S.C. § 1608(b). Service on a foreign sovereign is governed by 28 U.S.C. § 1608(a). The D.C. Circuit requires "strict adherence" to the requirements of this statutory subsection. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.Cir.1994). Sweden was not properly served under 28 U.S.C. § 1608(a) and for this reason as well the Court will dismiss the claims against the Kingdom.

### D. *Forum Non Conveniens*

In addition to their arguments on the merits, Telia and Sweden move to dismiss the complaint on the basis that the litigation could much more readily be conducted in Sweden. The Court will address this argument so that this decision is complete should review be sought.

The doctrine of *forum non conveniens* permits a court to dismiss an action over which it has jurisdiction when there is an adequate alternative forum in which the case can be more conveniently

heard. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Pain v. United Techs. Corp.,* 637 F.2d 775, 781 (D.C.Cir.1980). "The forum non conveniens determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). *Forum non conveniens* "presupposes" that there are at least two jurisdictions where the defendant may be sued. *See Gulf Oil Corp.,* 330 U.S. at 506–07, 67 S.Ct. 839. Thus, the threshold inquiry is whether there is an adequate alternative forum where the plaintiff may bring his claims. *See Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252 (1981) (citing *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839). If there is an alternative forum that has jurisdiction over the defendant, a court should balance the private interests of the litigants and the public interest to determine whether a motion to dismiss should be granted. *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. The weight of either the private interest factors or the public interest factors alone may be cause for dismissal. *See Jackson v. Am. Univ.,* 52 Fed.Appx. 518, 518–19, 2002 WL 31818236, *1 (D.C.Cir.2002)) (construing *Piper,* 454 U.S. at 257, 102 S.Ct. 252). While a plaintiff's choice of forum is usually given a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to the forum. *Piper,* 454 U.S. at 256, 102 S.Ct. 252. If the Court otherwise had jurisdiction over the parties here, it would dismiss on the ground of *forum non conveniens.*

 Telia and Sweden first have the burden of establishing that an adequate alternative forum exists. *See El–Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 677 (D.C.Cir.1996); *see also Piper,* 454 U.S. at 254–55, 102 S.Ct. 252 (finding that less favorable remedies in a foreign jurisdiction do not preclude dismissal based on

*forum non conveniens* so long as remedies are not "clearly inadequate or unsatisfactory"). Telia's general counsel avers that BPA International could assert its claims in the courts of Sweden and that "each of the defendants are subject to the jurisdiction of the appropriate Swedish courts." Telia's Motion to Dismiss, Exh. B at ¶ 8. BPA International does not address this issue in either of its oppositions to the defendants' motions. The arguments and factual assertions thus go unrebutted. *See Jackson,* 52 Fed.Appx. at 519, 2002 WL 31818236, at *1 (rejecting plaintiff's argument that Egypt was not an appropriate forum because the plaintiffs offered no evidence in the district court "to rebut the [defendant's] affidavit from an Egyptian attorney regarding the adequacy of the forum"). The Court finds that Telia and Sweden have met their burden on this point.

 Before granting dismissal based on *forum non conveniens,* the Court must consider the private interests of the litigants, including:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. The public interest in equitable administration of the laws must also be considered. The public interest factors attest to whether the suit is "unnecessarily burdensome" on the court, *Piper,* 454 U.S. at 256, 102 S.Ct. 252, or the residents of the community in which the suit is brought, and whether the community where the action leading to the suit actually took place has an interest in

the litigation. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839.

Because BPA International's claims arose out of actions occurring in Sweden, access to sources of proof would be much easier if the case were heard in Sweden rather than Washington, D.C. Many, if not most, of the potential witnesses and much of the evidence will likely be located in Sweden and therefore will likely be beyond the reach of this Court's compulsory process. In addition, obtaining witnesses' attendance will be significantly less costly if the case were heard in Sweden rather than the District. The alleged harm to BPA International appears to have been caused in significant measure by the requirement of Swedish law that its branch, BPA Scandinavia, have a Managing Director on site. None of the events and none of the parties has a connection with Washington, D.C., except Sweden which has an Embassy here. The local community is unlikely to have any special interest in this litigation whereas the citizens of Sweden have a much more significant interest because the case involves Swedish corporations[2] and the Kingdom of Sweden itself, and stems almost entirely from events that occurred in Sweden. The Court finds that the public and private interests strongly support dismissal on the grounds of *forum non conveniens*.

Because Sweden offers an adequate alternative forum for this lawsuit and because both the public and private interests weigh in favor of this suit being heard in Sweden rather than the District of Columbia, the Court will grant the motion to dismiss for *forum non conveniens*.

### E. *BPA International's Request for Jurisdictional Discovery*

BPA International asserts that it should be permitted discovery as to the "relationships of the defendants and the exercise of control by Sweden over Telia and its subsid[er]ies." Opp. to Telia's Motion to Dismiss at 5; Opp. to Sweden's Motion to Dismiss at 3. Any such discovery would not cure the defects in the service of process or the Court's determination that *forum non conveniens* indicates that this case should be brought in Sweden. There is nothing in the record to support BPA International's silent claim that there is more to "discover" about the relationship between Sweden, Telia and TICI that would or could be helpful to establish jurisdiction.

More to the point, immunity under FSIA involves not just a defense to liability but a protection from the burdens of suit. *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C.Cir.1990). Since the Court can, and has, decided to dismiss this case on other grounds, it is consistent with the purposes of FSIA to avoid unnecessary discovery on defendants Sweden and Telia, to the extent both and not just Sweden are covered by the FSIA. *See In re Papandreou*, 139 F.3d 247, 254 (D.C.Cir.1998) ("[A] trial court should ... normally consider other potentially dispositive jurisdictional defenses before allowing FSIA discovery").

### F. *Dismissal of Complaint Brought by Plaintiffs Blackwell and Renda*

The complaint is brought in the names of the holders of common shares of BPA International and the corporation. However, nothing in the complaint suggests that either Mr. Blackwell or Ms. Renda were injured in any role other than as a shareholder, for which a recovery by BPA International would provide full relief.

---

**2.** BPA Scandinavia appears to be a Swedish company in that the signature block on the interim agreement between it and Validation refers to it as BPA AB. Compl., Exh. 1 at 7.

BPA International does not argue that there was any personal injury to either of its shareholders. For the multiple reasons stated above, the Court will dismiss the claims of Mr. Blackwell and Ms. Renda against Sweden and Telia.

### Conclusion

For the reasons stated, both Telia's and Sweden's motions to dismiss are GRANTED. A separate Order will accompany this Memorandum Opinion.